[Cite as *State ex rel. Navistar, Inc. v. Indus. Comm. & Bisdorf*, 2018-Ohio-3386.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Navistar, Inc., | : | |
| Relator, | : | |
| v. | : | No. 16AP-776 |
| The Industrial Commission of Ohio and | : | (REGULAR CALENDAR) |
| Gary E. Bisdorf, | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on August 23, 2018

**On brief:** *Vorys, Sater, Seymour and Pease LLP,* and *Corrine S. Carman,* for relator.

**On brief:** *Michael DeWine*, Attorney General, and *Kevin J. Reis,* for respondent Industrial Commission of Ohio. **Argued:** *Kevin J. Reis.*

**On brief:** *Stanley R. Jurus Law Office,* and *Michael J. Muldoon,* for respondent Gary E. Bisdorf. **Argued:** *Michael J. Muldoon.*

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LUPER SCHUSTER, J.

{¶ 1} Relator, Navistar, Inc. ("Navistar"), initiated this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate the May 10, 2016 order of its staff hearing officer ("SHO") awarding respondent, Gary E. Bisdorf, compensation for permanent total disability ("PTD"), and to enter an order denying the requested compensation.

{¶ 2}    This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals.  In June 2017, the magistrate recommended this court issue a writ of mandamus ordering the commission to vacate the May 10, 2016 order of its SHO awarding PTD compensation, and to enter an order that determines whether Bisdorf voluntarily abandoned the workforce.  In December 2017, this court adopted the magistrate's findings of fact but rejected his conclusions of law.  *State ex rel. Navistar, Inc. v. Indus. Comm.*, 10th Dist. No. 16AP-776, 2017-Ohio-8976.  This court denied Navistar's request for a writ of mandamus on the voluntary abandonment issue and remanded the matter to the magistrate to rule on the remainder of Navistar's complaint. *Id.*

{¶ 3}    In March 2018, the magistrate issued his second decision in this matter, identifying the central issue presented as whether the reports of Drs. James H. Rutherford and David M. Grunstein constituted some evidence on which the commission relied in determining residual functional capacity.  The magistrate found that the reports of these two doctors separately provide some evidence that the allowed conditions prohibit all sustained remunerative employment.  The magistrate thus concluded the commission's granting of PTD compensation was not an abuse of discretion.

{¶ 4}    Navistar has filed three objections to the magistrate's second decision.  First, Navistar argues that Dr. Rutherford's opinion regarding Bisdorf's residual functional capacity is not some evidence because his reports are contradictory and conclusory.  Second, Navistar contends the magistrate erroneously applied *State ex rel. Bonnlander v. Hamon*, 150 Ohio St.3d 567, 2017-Ohio-4003, in his analysis of whether Dr. Grunstein's reports constitute some evidence in support of PTD compensation.  Third, Navistar argues the magistrate erroneously disregarded certain facts that demonstrate the reports of Drs. Grunstein and Rutherford are not some evidence on which the commission could rely in determining Bisdorf's ability to engage in sustained remunerative employment.

{¶ 5}    For ease of analysis, we first address Navistar's third objection to the magistrate's decision.  Navistar argues that the magistrate "overlooked essential facts which prove that the reports of Drs. Grunstein and Rutherford are not 'some evidence' " on which to base its decision to grant PTD compensation.  (Apr. 4, 2018 Objs. to Mag.'s Decision at 11.)  In particular, Navistar asserts the magistrate's second decision omits certain facts

pertaining to Bisdorf's work at a gunshop until 2010. Bisdorf's November 2015 PTD compensation application indicates that he worked part-time at a gunshop from 2004 until 2010 when the shop closed. The application further indicates that, during a typical day, Bisdorf spent two hours walking, four hours standing, and two hours sitting. Navistar argues the reports of Drs. Grunstein and Rutherford do not properly account for Bisdorf's ability to work at the gunshop until 2010. This argument is unpersuasive, however, because evidence that Bisdorf worked at a gunshop from 2004 until 2010 does not invalidate the reports that were based on examinations of Bisdorf in 2015 and 2016. Therefore, the magistrate did not err in not discounting the reports based on Bisdorf's work at the gunshop. Accordingly, we overrule Navistar's third objection to the magistrate's decision.

{¶ 6} Next we address Navistar's second objection to the magistrate's decision. Navistar argues the magistrate erroneously applied *Bonnlander* to the facts of this case. We disagree.

{¶ 7} In *State ex rel. Bonnlander v. Hamon*, 10th Dist. No. 14AP-855, 2015-Ohio-4038, this court concluded the commission did not abuse its discretion in denying PTD compensation to the claimant, Timothy Bonnlander, because psychologist Dr. Debjani Sinha's opinion that Bonnlander could work "up to 4 hours a day" met the standard for determining one's capability to perform sustained remunerative employment on a part-time basis, and because the non-medical disability factors did not otherwise preclude such employment. On appeal, the Supreme Court of Ohio observed that there is "no statutory or administrative authority for [this court's] interpretation that four or more hours of work a day is the standard for sustained remunerative employment." *Bonnlander*, 2017-Ohio-4003, at ¶ 17. The Supreme Court "has specifically rejected applying a numerical analysis" in PTD compensation cases, and "generally discourage[s] bright-line rules in workers' compensation matters." *Id.* at ¶ 18-19. Consequently, Supreme Court held that "there is no hourly standard for determining one's capability to perform sustained remunerative employment on a part-time basis. The commission decides whether a claimant is capable of sustained remunerative employment on a case-by-case basis." *Id.* at ¶ 20. In view of these principles, the Supreme Court reasoned that it was within the commission's discretion to rely on Dr. Sinha's report as evidence that Bonnlander was medically capable of sustained remunerative employment. Thus, in rejecting this court's implicit adoption of

a numerical hourly standard for sustained remunerative employment, the Supreme Court emphasized the commission's discretion in deciding a claimant's work capability based on the particular facts presented.

{¶ 8}   Here, Dr. Grunstein's October 10, 2015 "Functional Capacities Evaluation" states that Bisdorf can "stand/walk" for one hour in an eight-hour workday, and he can sit for two to three hours in an eight-hour workday.  As the magistrate noted, these findings reasonably support a conclusion that Dr. Grunstein limits Bisdorf to three to four hours of work in an eight-hour day.  In view of these limitations, the magistrate concluded that "[a]pplying the *Bonnlander* case, these work limitations can be viewed by the commission as preventing all sustained remunerative employment."  (App'x at ¶ 58.)  Navistar challenges this conclusion, arguing it is contrary to the Supreme Court's holding in *Bonnlander*.  This argument is unpersuasive.  As set forth above, the central tenants of the *Bonnlander* Supreme Court decision is that the commission has discretion in evaluating a claimant's ability to perform sustained remunerative employment, and that there is no bright-line hourly standard for determining that capability.  That the commission, based on its review of the medical reports, reached a different disability conclusion in *Bonnlander* than in this case, does not negate the applicability of the reasoning of that case to this case.  Thus, the magistrate properly applied *Bonnlander*.  Accordingly, we overrule Navistar's second objection to the magistrate's decision.

{¶ 9}   Our disposition of Navistar's second objection renders moot its first objection insofar as it is unnecessary to resolve the issue of whether Dr. Rutherford's reports also provide some evidence on which the commission could rely in determining Bisdorf's ability to perform sustained remunerative employment.  Consequently, we decline to adopt the magistrate's conclusions of law concerning Dr. Rutherford's reports.  Navistar's first objection is overruled as moot.

{¶ 10}  Following our independent review of the record pursuant to Civ.R. 53, we find the magistrate correctly concluded that Navistar is not entitled to the requested writ of mandamus.  The magistrate correctly determined that the commission's decision granting Bisdorf's request for PTD compensation was supported by some evidence and therefore not an abuse of discretion.  Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, except the

magistrate's conclusions regarding Dr. Rutherford's reports.   We therefore overrule Navistar's objections to the magistrate's decision and deny its request for a writ of mandamus.

*Objections overruled;*
*writ of mandamus denied.*

BROWN, P.J., and TYACK, J., concur.

_____

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Navistar, Inc., | : | |
| Relator, | : | |
| v. | : | No. 16AP-776 |
| The Industrial Commission of Ohio and | : | (REGULAR CALENDAR) |
| Gary E. Bisdorf, | : | |
| Respondents. | : | |

MAGISTRATE'S DECISION

**Rendered on March 21, 2018**

*Vorys, Sater, Seymour and Pease LLP,* and *Corrine S. Carman,* for relator.

*Michael DeWine,* Attorney General, and *Kevin J. Reis,* for respondent Industrial Commission of Ohio.

*Stanley R. Jurus Law Office,* and *Michael J. Muldoon,* for respondent Gary E. Bisdorf.

IN MANDAMUS

{¶ 11} In this original action, relator, Navistar, Inc. ("Navistar"), requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate the May 10, 2016 order of its staff hearing officer ("SHO") awarding respondent Gary E. Bisdorf ("claimant") compensation for permanent total disability ("PTD"), and to enter an order denying the compensation.

{¶ 12} This is the second magistrate's decision in this action. In his first decision filed June 22, 2017, the magistrate recommended this court issue a writ of mandamus ordering the commission to vacate the May 10, 2016 order of its SHO awarding PTD compensation, and to enter an order that determines whether claimant voluntarily abandoned the workforce. In its decision issued December 12, 2017, this court adopted the magistrate's findings of fact but rejected the magistrate's conclusions of law. This court denied Navistar's request for a writ of mandamus on the question of voluntary abandonment of the workforce and remanded the matter to this magistrate in order for him to rule on the remainder of Navistar's complaint.

{¶ 13} Here, the magistrate shall reiterate some but not all of the findings of fact that this court adopted as its own in its December 12, 2017 decision.

Findings of Fact:

{¶ 14} 1. Claimant has two industrial claims arising from his employment as an assembler for Navistar, a self-insured employer under Ohio's workers' compensation laws.

{¶ 15} 2. On November 7, 1971, claimant injured his left knee when a gas tank slipped and hit his left knee. The industrial claim (No. 493424-22) is allowed for "bruise left knee lower patella area; degenerative arthritis left knee; chondromalacia patella left knee."

{¶ 16} 3. On December 19, 2001, claimant injured his right shoulder when a tool broke while he was pulling down. The claim (No. 01-880461) is allowed for "right shoulder strain; partial rotator cuff tear right shoulder; right shoulder disorder."

{¶ 17} 4. Claimant had right shoulder surgery in March 2002. This included an arthroscopic rotator cuff repair. Later that same year, claimant underwent further right shoulder surgery.

{¶ 18} 5. Claimant has had several surgeries to his left knee. In July 2007, he had a left total knee arthroplasty.

{¶ 19} 6. On August 30, 2007, claimant moved for temporary total disability ("TTD") compensation beginning July 23, 2007 which is the date of the left knee arthroplasty.

{¶ 20} 7. Following a September 28, 2007 hearing, a district hearing officer ("DHO") issued an order awarding TTD compensation beginning July 23, 2007.

{¶ 21} 8. Navistar administratively appealed the DHO's order of September 28, 2007.

{¶ 22} 9. Following a November 6, 2007 hearing, an SHO issued an order affirming the DHO's order of September 28, 2007.

{¶ 23} 10. On October 10, 2015, at claimant's request, he was examined by chiropractic physician David M. Grunstein. Following the examination, Dr. Grunstein issued a one-page report captioned "Functional Capacities Evaluation." The report states:

> [One] In an 8 hour workday this person can stand/walk: 1 hour
>
> [Two] This person can stand at one time for 4-5 minutes
>        This person can walk at one time for 3-4 minutes
>
> [Three] In an 8 hour workday this person can sit for 2-3 hours
>
> [Four] This person can sit at one time for 20-30 minutes
>
> [Five] Lifting/Carrying limitations:
> A.) Up to 10 pounds: occasionally
> B.) 11-20 pounds: occasionally, with difficulty and increased pain
> C.) 21-50 pounds: not at all
> D.) 51-100 pounds: not at all
>
> [Six] Hands can be used for repetitive actions such as:
> Simple grasping: Right hand  yes   Left hand  yes
> Fine manipulation: Right hand  yes    Left hand  yes
>
> [Seven] Feet can be used for repetitive movement as in operating foot controls:
> Right foot:  Yes    Left foot:  No
>
> [Eight] Patient is able to:
> A.) Work above the shoulder level: never
> B.) Bend/twist turn [at] waist: occasional and limited
> C.) Squat:  never
> D.) Crawl:  never
> E.) Climb:  never
> F.) Push/pull:  occasional and limited

> [Nine] Other restrictions or limitations this person has: This injury has resulted in this person suffering with sleep deprivation.

{¶ 24} 11. On October 22, 2015, Dr. Grunstein issued a four-page report to claimant's counsel. The report states:

> *History of the 12-19-01 injury:* In the course of employment this person was injured as above described when he was torqueing a fitting and the wrench broke and this resulted in right shoulder injury. He has undergone 2 shoulder surgeries, both arthroscopic and he has undergone post operative physical therapy with each surgery. He also notes that he took oral pain medications.
>
> *History of the 11-07-71 injury:* In the course of employment this person was injured when a stack of fuel tanks were bumped into by a forklift and the stack fell and struck his left leg. He states that he had undergone 8 knee surgeries, with the final surgery being a total knee replacement. He also notes that he partook in a lot of physical therapy and that he took oral pain medications.
>
> *Present complaints of the 12-19-01 injury:* He describes having constant right shoulder pain. Right shoulder weakness and crepitus. Limited movement of the shoulder and he also notes that following the second surgery, the shoulder quit dislocating, but still has a tendency towards subluxating. He notes increased pain with damp, cold weather. This pain disrupts sleep on a nightly basis.
>
> *Present complaints of the 11-07-71 injury:* [C]onstant moderate to severe knee pain. He notes that he cannot straighten the knee, and he cannot fully bend the knee. He cannot squat or kneel. Ambulation of stairs is difficult and limited and he notes increased pain with damp, cold weather. This pain disrupts sleep often.
>
> *Treatment:* He was taking oral NSAIDS, but they were irritating his stomach to the point that he had to stop taking them, and now he takes nothing for the pain and he notes that it is a struggle to deal with this amount of pain on an on going basis.

(Emphasis sic.)

{¶ 25} Following the above statements, Dr. Grunstein explains how he determined that claimant suffers a 25 percent whole person impairment for the shoulder injuries, a 30 percent whole person impairment for the left knee injuries, and a 3 percent whole person impairment for "chronic intractable pain." He concludes that the impairments combine to equal a total whole person impairment of 50 percent.

{¶ 26} In the last paragraph of his report, Dr. Grunstein opines:

> *Based on the consultation and examination findings above stated and how these findings correlate with the A.M.A. Guides, it is my opinion that the above named presented in this office with a total whole person impairment of **50 percent whole person impairment**, on the above stated date, for the above stated conditions. Also note that when considering the above stated information and attached functional capacities evaluation, I am of the opinion that these injuries have resulted in this person being **permanently and totally disabled** from partaking in any type of sustained remunerative employment and is therefore **permanently and totally disabled**.*

(Emphasis sic.)

{¶ 27} 12. On November 25, 2015, claimant filed an application for PTD compensation. In support, claimant submitted the one-page report dated October 10, 2015 from Dr. Grunstein captioned "Functional Capacities Evaluation" and the four-page report dated October 22, 2015 from Dr. Grunstein.

{¶ 28} 13. On January 18, 2016, at Navistar's request, claimant was examined by Christopher D. Holzaeffel, M.D., who practices orthopedics.

{¶ 29} 14. Dr. Holzaeffel issued a five-page narrative report, stating:

> It is my medical opinion, based on the allowed conditions of right shoulder disorder (NOS); sprain, right shoulder; tear, right rotator cuff; arthritis, left knee; and chondromalacia, left knee, Mr. Bisdorf is capable of returning to sustained remunerative employment. The claimant has good function regarding his left knee, including the ability to sit for 2 hours at a time and walk for 20-30 minutes at a time. The claimant states he is taking no pain medication regarding his left knee. The claimant has a mild antalgic gait regarding his left lower extremity, but this is due to an injury to the left Achilles

tendon. The claimant has only mild pain and loss of range of motion of the right shoulder associated with the objective findings noted on examination. He does have some mild weakness of forward flexion and abduction.

* * *

It is my medical opinion, the claimant is able to return to sustained remunerative employment with the following restrictions: It is my medical opinion, the claimant would be able to sit for no more than 2 hours at a time and walk for no more than 20-30 minutes at a time. He would be unable to ascend or descend stairs on a repetitive basis, and no stooping beyond 90 degrees of left knee flexion. He would also have a 10-pound lifting restriction, and restriction of his overhead activities to no more than 2 hours in an eight-hour work day.

{¶ 30} Furthermore, Dr. Holzaeffel opines that the right shoulder injuries produce an 8 percent whole person impairment, for a total of 28 percent whole person impairment for all the allowed conditions of the two industrial claims.

{¶ 31} 15. On March 4, 2016, at the commission's request, claimant was examined by James H. Rutherford, M.D. Dr. Rutherford examined for all the allowed conditions in the two industrial claims. In his six-page narrative report that he signed on March 15, 2016, he opined that claimant has reached maximum medical improvement ("MMI") concerning all of the allowed conditions in both claims.

{¶ 32} On the last page of his narrative report, Dr. Rutherford opines:

Because the above described orthopedic impairments related to the claim allowances of the two claims under consideration, Mr. Bisdorf is not capable of doing work activity, or incapable of work activity, and I have indicated on the Physical Strength Rating Form, Mr. Bisdorf is not capable of doing occasional standing and walking for work activity. He can do no stooping, climbing, or crawling for work activity. Mr. Bisdorf also can do no above-shoulder work activity with his right upper extremity. He can do no repetitive pushing or pulling with his right upper extremity. Mr. Bisdorf can lift up to 5 lbs. maximum with his right upper extremity. He can only lift up to 10 lbs. maximum using both upper extremities. Because of his orthopedic impairments and the functional limitations of those impairments, Mr. Bisdorf is not capable of doing even

sedentary work activities as defined by the Ohio Bureau of Workers' Compensation and the U.S. Department of Labor.

It is thus my medical opinion that, based only on the orthopedic claim allowances of the two claims under consideration, that Mr. Gary Bisdorf is incapable of work, and I have indicated this on the Physical Strength Rating Form.

{¶ 33} 16. On a "Physical Strength Rating" form, Dr. Rutherford indicated by his mark "[t]his Injured Worker is incapable of work."

{¶ 34} 17. On May 10, 2016, the PTD application was heard by an SHO. The hearing was recorded and transcribed for the record.

{¶ 35} 18. Following the May 10, 2016 hearing, the SHO mailed an order on May 13, 2016 awarding PTD compensation beginning October 22, 2015 based on the medical reports of Drs. Grunstein and Rutherford. Based on those medical reports, the SHO found that claimant is unable to perform any sustained remunerative employment. Consequently, the SHO determined it was unnecessary to discuss or analyze the non-medical disability factors. The SHO's order of May 10, 2016 states:

> The start date for the award of Permanent Total Disability Compensation of 10/22/2015 is based upon the 10/22/2015 report of David Grunstein, D.C. who opined within a report of that date that the Injured Worker was permanently and totally disabled from partaking in any type of sustained gainful remunerative employment. The Staff Hearing Officer finds that the Injured Worker's allowed condition[s] [in] his claims have reached Maximum Medical Improvement based upon the 3/15/2016 report of Dr. Rutherford.
>
> * * *
>
> Particularly, Dr. Rutherford examined the Injured Worker on behalf of the Industrial Commission on 03/04/2016 and determined that the Injured Worker "is not capable of doing occasional standing and walking for work activity." The Staff Hearing Officer finds that Ohio Adm.Code 4121-3-34(B)(2)(a) provides specifically that:
>
> "Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met."

> The Injured Worker's allowed conditions of his left leg are in claim 493424-22. Dr. Rutherford found that the Injured Worker was not capable of doing occasional standing and walking for work activity; he subsequently found that the Injured Worker was incapable of work.
>
> Based upon the reports of James Rutherford, M.D., dated 03/15/2016, and David Grunstein, D.C., dated 10/22/2015, it is found that the Injured Worker is unable to perform any sustained remunerative employment solely as a result of the medical impairment caused by the allowed physical conditions. Therefore, pursuant to State ex rel. Speelman v. Indus. Comm., 73 Ohio App.3d 757, 598 N.E.2d 192 (10th Dist. 1992), it is not necessary to discuss or analyze the Injured Worker's non-medical disability factors.

{¶ 36} 19. On May 27, 2016, Navistar moved for reconsideration of the SHO's order of May 10, 2016.

{¶ 37} 20. On July 1, 2016, the three-member commission mailed an order denying Navistar's motion for reconsideration.

{¶ 38} 21. On November 15, 2016, relator, Navistar, Inc., filed this mandamus action.

Conclusions of Law:

{¶ 39} Two issues are presented: (1) whether the reports of Dr. Rutherford provide some evidence on which the commission relied in determining residual functional capacity and, (2) whether the reports of Dr. Grunstein provide some evidence on which the commission relied in determining residual functional capacity. Ohio Adm.Code 4121-3-34(B)(4).

{¶ 40} The magistrate finds that the reports of Drs. Rutherford and Grunstein provide some evidence on which the commission relied in determining that the allowed conditions of the two industrial claims prohibit all sustained remunerative employment.

{¶ 41} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

## Basic Law

{¶ 42} Ohio Adm.Code 4121-3-34 sets forth the commission's rules for the adjudication of PTD applications. Ohio Adm.Code 4121-3-34(B) sets forth definitions.

{¶ 43} Ohio Adm.Code 4121-3-34(B)(2) is captioned "Classification of physical demands of work."  Thereunder, the code provides:

> (a) "Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.
>
> (b) "Light work" means exerting up to twenty pounds of force occasionally, and/or up to ten pounds of force frequently, and/or a negligible amount of force constantly (constantly: activity or condition exists two-thirds or more of the time) to move objects. Physical demand may be only a negligible amount, a job should be rated light work: (i) when it requires walking or standing to a significant degree; or (ii) when it requires sitting most of the time but entails pushing and/or pulling or [sic] arm or leg controls; and/or (iii) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

{¶ 44} In *State ex rel. O'Brien v. Cincinnati Inc.*, 10th Dist. No. 07AP-825, 2008-Ohio-2841, at ¶ 9-10, the court summarized relevant case law:

> Initially, it is important to note that a medical report that identifies the worker's exertional category as defined in the Ohio Administrative Code and does not include additional opinions regarding specific restrictions on sitting, lifting, standing, and so forth is still sufficient to constitute some evidence. *State ex rel. Ace v. Toyota of Cincinnati Co.*, Franklin App. No. 03AP-517, 2004 Ohio 3971, at P30. Thus, a medical report may constitute evidence on which the commission may rely when the physician simply opines the claimant was limited to "sedentary work" and provides no further details of the claimant's various functional restrictions. *Id.*
>
> On the other hand, the commission cannot simply rely on a physician's "bottom line" identification of an exertional category without examining the specific restrictions imposed

by the physician in the body of the report. See *State ex rel. Owens-Corning Fiberglas Corp. v. Indus. Comm.*, Franklin App. No. 03AP-684, 2004 Ohio 3841; and *State ex rel. Howard v. Millennium Inorganic Chemicals*, Franklin App. No. 03AP-637, 2004 Ohio 6603. In both *Owens-Corning* and *Howard*, the doctor indicated that the injured worker could perform at a certain strength level, and yet, the rest of the report indicated greater restrictions on the injured worker that would actually render him incapable of performing the strength level work that the doctor had indicated he could perform. This court held in *Owens-Corning* and *Howard* that the commission cannot simply rely upon a determination that an injured worker can perform at a certain strength level; rather, the commission must review the doctor's report and actually make certain that any physical restrictions the doctor listed correspond with an ability to actually perform at the exertional level indicated by the doctor.

### Dr. Rutherford's Reports

{¶ 45} The issue with respect to Dr. Rutherford's reports is whether Dr. Rutherford's conclusion that claimant "is incapable of work" is consistent or supported by his findings regarding orthopedic impairments related to the allowed conditions of the two industrial claims.

{¶ 46} In his narrative report, second to the last paragraph, Dr. Rutherford finds that claimant "can do no repetitive pushing or pulling with his right upper extremity." In the definition, "sedentary work" means exerting up to ten pounds of force occasionally and/or a negligible amount of force frequently, to lift, carry, push, pull or otherwise move objects. Thus, by definition, sedentary work requires some repetitive pushing or pulling. Because claimant can do no repetitive pushing or pulling according to Dr. Rutherford, sedentary work is precluded. Under these circumstances, Dr. Rutherford can properly conclude that claimant "is incapable of work." Thus, Dr. Rutherford's reports provide some evidence that claimant is unable to perform sustained remunerative employment.

### Dr. Grunstein's Reports

{¶ 47} In his October 22, 2015 report, Dr. Grunstein concludes "these injuries have resulted in this person being permanently and totally disabled from partaking in any type of sustained gainful renumerative [sic] employment." The issue is whether Dr.

Grunstein's conclusion is consistent or supported by his findings contained in his October 10, 2015 "Functional Capacities Evaluation."

{¶ 48} *State ex rel. Bonnlander v. Hamon,* 150 Ohio St.3d 567, 2017-Ohio-4003, is instructive.

{¶ 49} Timothy Bonnlander applied for PTD compensation on February 28, 2014 following his industrial injury of October 13, 1992. The claim was allowed for numerous medical conditions and depressive disorder. At the commission's request, Bonnlander was examined by John J. Brannan, M.D., and Debjani Sinha, Ph.D.

{¶ 50} Dr. Brannan concluded that Bonnlander's medical conditions would not prevent him from performing sedentary work. Dr. Sinha evaluated Bonnlander's psychological condition and concluded that he was capable of working "part-time, up to 4 hours a day," with the following limitations: "accommodate for variable concentration; routine jobs are more appropriate; minimal new learning on an ongoing basis; multiple breaks." *Id.* ¶ 4.

{¶ 51} Following a hearing, an SHO issued an order denying Bonnlander's PTD application. Relying on the reports of Drs. Brannan and Sinha, the SHO concluded that Bonnlander "could engage [in] sedentary employment activity which involves part-time work, up to four hours a day and also involves routine employment and minimal new learning on an ongoing basis. The sedentary work should also avoid overhead use of the right arm and avoid excessive lifting, bending and twisting." *Id.* at ¶ 5.

{¶ 52} The SHO also analyzed the non-medical disability factors in reaching his decision to deny the application.

{¶ 53} Bonnlander then filed a complaint in mandamus in this court. A magistrate concluded that Dr. Sinha's report supported the commission's decision. The magistrate held that Dr. Sinha's opinion that Bonnlander can work "up to 4 hours a day" met the standard for part-time work set forth in *State ex rel. Sheller-Chiles v. Indus. Comm.,* 10th Dist. No. 13AP-245, 2014-Ohio-313, ¶ 15.

{¶ 54} This court adopted the magistrate's decision and denied the writ. Bonnlander appealed as of right to the Supreme Court of Ohio.

{¶ 55} As stated by the Supreme Court in its decision, the issue is whether Dr. Sinha's report constitutes some evidence supporting the commission's order denying the PTD application.

{¶ 56} While affirming the judgment of this court, the Supreme Court observed that "[t]here is no statutory or administrative authority for [this court's] interpretation that four or more hours of work a day is the standard for sustained remunerative employment." *Bonnlander* at ¶ 17. Furthermore, the court "generally discourages bright-line rules in workers' compensation matters." *Id.* at ¶ 19.

{¶ 57} In *Bonnlander,* the Supreme Court held:

> [T]here is no hourly standard for determining one's capability to perform sustained remunerative employment on a part-time basis. The commission decides whether a claimant is capable of sustained remunerative employment on a case-by-case basis. Here, Dr. Sinha opined that Bonnlander's psychological condition limited him to four hours of work a day with multiple breaks. It was within the commission's discretion to rely on Dr. Sinha's report as evidence to support the conclusion that Bonnlander was capable of up to four hours of sedentary work a day.

*Id.* at ¶ 20.

{¶ 58} In his October 10, 2015 "Functional Capacities Evaluation," Dr. Grunstein finds that claimant can "stand/walk" for one hour during an eight-hour workday. He also finds that claimant can sit for two to three hours. Adding these two findings, one can conclude that Dr. Grunstein limits claimant to three to four hours of work in an eight-hour day. Applying the *Bonnlander* case, these work limitations can be viewed by the commission as preventing all sustained remunerative employment. Given that analysis, the magistrate concludes here that Dr. Grunstein's reports provided the commission with some evidence on which it relied to enter a finding that claimant is unable to perform sustained remunerative employment.

{¶ 59} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).