Per Curiam.
{¶ 1} Food and Water Watch ("FWW") and relator-appellant, FreshWater Accountability Project ("FWAP"), filed a complaint for a writ of mandamus to compel respondents-appellees Rick Simmers, the chief of the oil-and-gas-resources-management division of the Ohio Department of Natural Resources ("ODNR"), and James Zehringer, the director of ODNR (collectively, "the ODNR appellees") to promulgate rules relating to the storage, recycling, treatment, processing, and disposal of waste substances associated with oil and gas drilling. The state of Ohio and the governor of Ohio (collectively, "the state appellees") were also named as respondents in the complaint and are also appellees in this court. The Tenth District Court of Appeals granted summary judgment *394 to appellees on the grounds that FWW and FWAP lack standing. We affirm the court of appeals' judgment.
I. Background
{¶ 2} R.C. 1509.03(A) states that the chief of the oil-and-gas-resources-management division of ODNR "shall adopt" rules, in accordance with R.C. Chapter 119, for the operation of oil and gas wells and production facilities. The Revised Code identifies specific matters the rules must address, including safety in well drilling and operations, protection of the public water supply, and containment and disposal of drilling and production waste. R.C. 1509.03(A)(1), (2), and (4).
{¶ 3} The division chief is also required to adopt rules regarding the storage, recycling, treatment, processing, and disposal of brine and other waste substances. R.C. 1509.22(C). Those rules must establish procedures and requirements governing permits for the handling of brine and other waste substances. Id. Without such a permit, "no person shall store, recycle, treat, process, or dispose of in this state brine or other waste substances associated with the exploration, development, well stimulation, production operations, or plugging of oil and gas resources" after January 1, 2014. R.C. 1509.22(B)(2).
{¶ 4} FWW and FWAP alleged in their complaint that the ODNR appellees have not issued rules governing the permitting process for handling and treating waste from oil and gas operations. Instead, the ODNR appellees have allowed facilities to operate pursuant to "temporary authorization" from Division Chief Simmers.
{¶ 5} For example, on March 6, 2014, Simmers issued an order granting "temporary authorization" for Industrial Waste Control/Ground Tech., Inc. ("IWC") to operate a facility in Youngstown, Ohio, at which "radiological waste characterization, tank cleaning and decontamination, waste solidification, brine storage, and preparation for disposal operations" would occur. The only conditions imposed upon IWC were that the company conduct all operations in compliance with the law and not dispose of brine unlawfully. The temporary authorization to operate is to remain in effect until the division chief promulgates rules under R.C. 1509.22(C) and either IWC receives a permit under the new rules, IWC is denied a permit, or six months elapse from the effective date of the rules.
{¶ 6} Similarly, on January 3, 2014, Simmers granted temporary authority, subject to the same terms and conditions, to the EnerGreen 360 Holding Company, L.L.C., a treatment facility in Belmont County. In total, the complaint in this case lists 23 separate facilities (including IWC and EnerGreen) allegedly operating in Ohio pursuant to temporary authorization orders issued by Simmers.
{¶ 7} FWW and FWAP, two nonprofit organizations, filed a complaint, naming the ODNR appellees and the state appellees as respondents, for a writ of mandamus in the Tenth District Court of Appeals to compel the ODNR appellees to promulgate rules as required by R.C. 1509.03 and 1509.22. Two facility operators, appellees Chesapeake Exploration, L.L.C., and Antero Resources Corporation, sought leave to intervene, which the magistrate granted.
{¶ 8} On December 23, 2014, the state appellees and the ODNR appellees moved to dismiss FWW and FWAP's action for lack of jurisdiction and for failure to state a claim upon which relief could be granted. In their motion, the state appellees and the ODNR appellees asserted that FWW and FWAP lacked standing to assert their claims. FWW and FWAP filed a memorandum contra respondents' motion to dismiss *395 and, in support of their memorandum, filed affidavits of four of their members: David and Bobbie Castle, Hattie Wilkins, and Cheryl Mshar.
{¶ 9} On February 27, 2015, FWW and FWAP filed a "motion for summary judgment and/or for peremptory writ of mandamus." On March 12, 2015, the intervenors filed a motion for summary judgment claiming that FWW and FWAP lacked standing to assert their claims. On April 28, 2015, two more motions were filed seeking summary judgment based on lack of standing: one on behalf of the state appellees and the other on behalf of the ODNR appellees. The state appellees also argued that they had no clear legal duty relevant to the claims in the case.
{¶ 10} On January 14, 2016, a magistrate recommended granting summary judgment in favor of the respondents and the intervenors. The magistrate considered whether FWW and FWAP (through their individual members) could establish traditional standing (i.e., could establish that the respondents' allegedly unlawful conduct caused their members injuries that are likely to be redressed by the requested relief), public-right-doctrine exception to standing, or taxpayer standing to bring suit and concluded that they could not. The magistrate determined that they had failed to establish traditional standing because they could not establish injury.
{¶ 11} FWW and FWAP filed objections to the magistrate's decision. Relators, summarizing their objections, argued that they have traditional standing as associations whose members claimed personal standing to sue. Relators relied on the affidavits of the Castles, Wilkins, and Mshar, arguing that they "demonstrate harm or threats of harm in the form of possible environmental damage and damage to human health" as a consequence of Simmers's failure to promulgate rules pursuant to R.C. 1509.22. In the alternative, FWW and FWAP also argued that the ODNR appellees' failure to promulgate rules pursuant to R.C. 1509.22 is sufficient to establish a public-right-doctrine exception to standing in this case.
{¶ 12} The Tenth District Court of Appeals, overruling FWW and FWAP's objections, adopted the magistrate's decision and granted summary judgment based on lack of standing. Presiding Judge Dorrian, concurring for different reasons, found that FWW and FWAP demonstrated sufficient harm to at least one of their members to satisfy one of the requirements of traditional standing but failed to demonstrate the redressability requirement-that the relief sought would alleviate the harm alleged. FWAP timely appealed and presents three propositions of law to argue that it has standing to bring this action:
Proposition of Law No. 1: Appellant has standing pursuant to R.C. 2731.02 as a beneficially interested party commanding the performance of an act which the law specifically enjoins.
Proposition of Law No. 2: By having members who are injured by the deprivation of their rights under R.C. 1509.22 and the Ohio Administrative Procedure Act, and by Facilities Operating Pursuant to Chief's Orders, appellant meets the traditional standing requirements to pursue a writ of mandamus action.
Proposition of Law No. 3: The appellant has standing to file a mandamus action to procure enforcement or protection of a public right, and need not show any special individual interest or injury where the appellant is properly interested in the execution of the laws of the state.
*396 II. FWAP waived standing under R.C. 2731.02 and as a taxpayer
{¶ 13} FWAP argues that R.C. 2731.02"provides a 'beneficially interested' party with statutory standing in a writ of mandamus action under the statute." As FWAP notes, "the 'party beneficially interested' standard is completely absent from the Magistrate's Decision." FWAP, however, failed to raise such an objection to the magistrate's decision.
{¶ 14} Additionally, FWAP appears to argue that it has taxpayer standing. The magistrate held that FWAP's failure to pursue the argument resulted in waiver of the argument. FWAP did not object to the magistrate's conclusion that FWW and FWAP had waived the taxpayer-standing argument.
{¶ 15} "The Rules of Civil Procedure are generally applicable in original actions for extraordinary writs." State ex rel. Sautter v. Grey , 117 Ohio St.3d 465, 2008-Ohio-1444, 884 N.E.2d 1062, ¶ 11, citing State ex rel. Ahmed v. Costine , 99 Ohio St.3d 212, 2003-Ohio-3080, 790 N.E.2d 330, ¶ 5, fn. 1, and Gaskins v. Shiplevy , 74 Ohio St.3d 149, 150, 656 N.E.2d 1282 (1995). Civ.R. 53(D)(3)(b)(ii) provides, "An objection to a magistrate's decision shall be specific and state with particularity all grounds for objection." A party shall not assign as error on appeal the court's adoption of any legal conclusion unless the party has objected to that conclusion. Civ.R. 53(D)(3)(b)(iv).
{¶ 16} Here, because FWAP and FWW did not raise an argument relating to standing under R.C. 2731.02 or standing as a taxpayer in their objections to the magistrate's decision, the arguments have been waived on appeal. See State ex rel. Schmidt v. School Emps. Retirement Sys. , 100 Ohio St.3d 317, 2003-Ohio-6086, 798 N.E.2d 1088, ¶ 6 ; Civ.R. 53(D)(3)(b)(iv) ; ProgressOhio.org, Inc. v. JobsOhio , 139 Ohio St.3d 520, 2014-Ohio-2382, 13 N.E.3d 1101, ¶ 16 ; State ex rel. Taylor v. Indus. Comm. , 10th Dist. Franklin No. 05AP-803, 2006-Ohio-4781, 2006 WL 2627557, ¶ 3.
III. FWAP members do not meet traditional standing requirements
{¶ 17} FWAP argues that it has met the requirements for standing as an association because it has demonstrated that its members, the Castles, Wilkins, and Mshar, have met the traditional standing requirements to pursue these claims. We disagree.
{¶ 18} As an association, FWAP has standing to bring a lawsuit on behalf of its members when (1) its members would otherwise have standing to sue in their own right, (2) the interests FWAP seeks to protect are germane to FWAP's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. League of United Latin Am. Citizens v. Kasich, 10th Dist. Franklin No. 10AP-639, 2012-Ohio-947, 2012 WL 760800, ¶ 19 ; see Ohio Contrs. Assn. v. Bicking, 71 Ohio St.3d 318, 320, 643 N.E.2d 1088 (1994). At issue is whether FWAP's members have standing to sue in their own right.
{¶ 19} To establish traditional standing, a party must show that the party has "suffered (1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief." Moore v. Middletown , 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 22, citing Lujan v. Defenders of Wildlife , 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "These three factors-injury, causation, *397 and redressability-constitute 'the irreducible constitutional minimum of standing.' " Moore at ¶ 22, quoting Lujan at 560, 112 S.Ct. 2130. FWAP's members do not meet this standard.
{¶ 20} FWAP asserts that the affidavits of its members, the Castles, Wilkins, and Mshar, demonstrate that each member has suffered an injury sufficient to confer standing. However, this court has held that "the injury must be concrete and not simply abstract or suspected" to be compensable. Ohio Contrs. Assn. at 320, 643 N.E.2d 1088. Wilkins states in her affidavit that she "believe[s]" that she and her friends and family are breathing polluted air as a result of IWC's routine operations and that they may be exposed to radioactive contamination in the event of a waste spill. The Castles, in their affidavit, express concern for their health and that of their family members in the Barnesville area due to EnerGreen's oil-and-gas-drilling-waste-treatment facility. The health problems that the Castles and Wilkins identify are speculative and are therefore insufficient to establish standing. Thus, FWAP cannot demonstrate that the Castles or Wilkins would have standing to sue in their own right.
{¶ 21} Mshar's affidavit, however, addresses a specific concern beyond the speculative health issues presented by the Castles and Wilkins. Mshar claims, "I can smell hydrocarbon stenches from the plant, a smell which I first noticed in 2014 after the company received its Chief's Order." Assuming arguendo only that Mshar's affidavit presents sufficient evidence that she has suffered an injury that is traceable to the ODNR appellees' allegedly unlawful conduct, she nevertheless lacks standing because FWAP has not demonstrated that the promulgation of rules pursuant to R.C. 1509.22 will likely redress her injury.
{¶ 22} In addition to FWAP's request for injunctive relief, which courts of appeals do not have jurisdiction to order pursuant to Article IV, Section 3(B)(1) of the Ohio Constitution, FWAP sought an order compelling the promulgation of rules under R.C. 1509.22(C), which provides:
The chief shall adopt rules regarding storage, recycling, treatment, processing, and disposal of brine and other waste substances. The rules shall establish procedures and requirements in accordance with which a person shall apply for a permit or order for the storage, recycling, treatment, processing, or disposal of brine and other waste substances that are not subject to a permit issued under section 1509.06 or 1509.21 of the Revised Code and in accordance with which the chief may issue such a permit or order.
{¶ 23} While the statute requires that the rules "establish procedures and requirements" for the permit process, R.C. 1509.22(C) does not mandate that the rules address odors. Thus, while it is possible that the rules promulgated under R.C. 1509.22(C) could eliminate Mshar's concerns regarding odors, a plain reading of the statute does not support, and FWAP has not shown, that the writ sought-one that would mandate the promulgation of rules-will likely redress the purported injury. See Moore , 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, at ¶ 22. This analysis is not to be construed as this court's excusing public officials from carrying out mandatory duties; simply, FWAP has failed to show that Mshar's alleged injury-the odor-will likely be redressed by the promulgation of rules.
*398 {¶ 24} Similar to Presiding Judge Dorrian's conclusion in her separate opinion in the court of appeals, we conclude that Mshar did not establish that the ODNR division chief's regulations would likely remediate the alleged harm. See 2016-Ohio-3135, 2016 WL 2992651, ¶ 10 (Dorrian, P.J., concurring in part and concurring in judgment).
{¶ 25} Because FWAP cannot demonstrate that the Castles or Wilkins have been injured and because FWAP cannot demonstrate that the promulgation of rules will likely redress Mshar's alleged injury, FWAP has not demonstrated that any of its members have traditional standing and thus cannot establish associational standing.
IV. The public-right doctrine does not apply to FWAP
{¶ 26} FWAP asserts that it may pursue its claims in this mandamus action pursuant to the public-right doctrine. FWAP argues that in determining the application of the public-right doctrine, this court should not apply the "rare and extraordinary" requirement from State ex rel. Ohio Academy of Trial Lawyers v. Sheward , 86 Ohio St.3d 451, 715 N.E.2d 1062 (1999), because unlike the relators in Sheward , it is not challenging the constitutionality of the statute, but rather is seeking a writ of mandamus to compel the ODNR appellees "to comply with [R.C.] 1509.22(C) by promulgating rules and regulations." (Emphasis sic.)
{¶ 27} It has long been held and is well established that before an Ohio court can consider the merits of a legal claim, the party seeking relief must establish standing to sue. Ohio Contrs. Assn. , 71 Ohio St.3d at 320, 643 N.E.2d 1088. However, in Sheward , a deeply divided, four-to-three decision, this court held:
Where the object of an action in mandamus and/or prohibition is to procure the enforcement or protection of a public right, the relator need not show any legal or special individual interest in the result, it being sufficient that the relator is an Ohio citizen and, as such, interested in the execution of the laws of this state.
Sheward at paragraph one of the syllabus. However, Sheward also provided that "this court will entertain a public action only 'in the rare and extraordinary case ' where the challenged statute operates, 'directly and broadly, to divest the courts of judicial power .' " (Emphasis sic.) Id. at 504, 715 N.E.2d 1062. "The public-right doctrine represents 'an exception to the personal-injury requirement of standing.' " JobsOhio , 139 Ohio St.3d 520, 2014-Ohio-2382, 13 N.E.3d 1101, at ¶ 9, quoting Sheward at 503.
{¶ 28} Since its announcement, Sheward has been heavily criticized. See , e.g. , State ex rel. Ohio AFL-CIO v. Ohio Bur. of Workers' Comp. , 97 Ohio St.3d 504, 2002-Ohio-6717, 780 N.E.2d 981, ¶ 62 (Moyer, C.J., dissenting) (citing law-review articles criticizing Sheward ); see also JobsOhio at ¶ 13. The position that issues are "of great importance and interest to the public" may be resolved by a court without requiring that the parties demonstrate standing to proceed, as identified in Sheward at 471, unfortunately result in " 'political opportunism, allowing the majority to invalidate a disfavored law using a questionable approach.' " Ohio AFL-CIO at ¶ 62 (Moyer, C.J., dissenting), quoting Tracy, Ohio ex rel. Ohio Academy of Trial Lawyers v. Sheward: The End Must Justify the Means , 27 N.Ky.L.Rev. 883, 885 (2000).
{¶ 29} Further, and perhaps a more egregious and problematic abuse, this position *399 permits this court to issue opinions in cases in which there has been no injury, resulting in advisory opinions, which long-standing Ohio law prohibits this court from issuing, Fortner v. Thomas , 22 Ohio St.2d 13, 14, 257 N.E.2d 371 (1970) ("It has become settled judicial responsibility for courts to refrain from giving opinions on abstract propositions and to avoid the imposition by judgment of premature declarations or advice upon potential controversies"); N. Canton v. Hutchinson , 75 Ohio St.3d 112, 114, 661 N.E.2d 1000 (1996) ("It is, of course, well settled that this court will not indulge in advisory opinions"); State ex rel. Keyes v. Ohio Pub. Emps. Retirement Sys. , 123 Ohio St.3d 29, 2009-Ohio-4052, 913 N.E.2d 972, ¶ 29 ; see Newark, Somerset & Straitsville RR. Co. v. Perry Cty. Commrs. , 30 Ohio St. 120, 126 (1876) (When no judgment can be rendered, "a consideration and determination of the question of law submitted and argued would be an idle ceremony" and the case must be dismissed).
{¶ 30} Sheward essentially allows this court to engage in policy-making by ruling on the legislation of the General Assembly in cases that lack an injured party, i.e., a party that can establish traditional standing. Thus, any authority provided by Sheward is, at best, questionable. For these reasons, we reject FWAP's argument that this court should broaden the holding announced in Sheward .
{¶ 31} This court has not granted a public-right-doctrine exception to standing pursuant to Sheward in the past 15 years, and we decline to do so today. Even assuming that this court would still grant a party a public-right-doctrine exception to standing in the appropriate "rare and extraordinary case," FWAP has not met its burden to demonstrate that this case is a "rare and extraordinary case" worthy of the exception. FWAP argues that the division chief's failure to promulgate rules is "of great importance and the public injury is serious." FWAP also contends that the division chief "acted unlawfully and unreasonably approved the orders without following the direction, criteria, or standards from the Ohio General Assembly." However, FWAP has presented this court with no evidence to support its assertions. Therefore, we reject FWAP's arguments that the public-right doctrine should apply in this case.
V. Conclusion
{¶ 32} Accordingly, because FWAP did not demonstrate that its individual members would have standing in their own right, its claim for associational standing fails. Further, we decline to extend Sheward in this case. Because FWAP has waived other arguments regarding standing and has not otherwise demonstrated that it has standing to proceed in this mandamus action, we affirm the judgment of the Tenth District Court of Appeals denying FWW and FWAP's motion for summary judgment, granting summary judgment in favor of the state appellees, the ODNR appellees, and the intervenors, and denying the requested writ of mandamus.
Judgment affirmed.
O'Connor, C.J., and Kennedy, French, Fischer, and DeWine, JJ., concur.
O'Donnell, J., concurs in part and dissents in part, with an opinion.
O'Neill, J., dissents.
O'Donnell, J., concurring in part and dissenting in part.
{¶ 33} I concur in the judgment of the majority in denying a writ of mandamus as to Governor Kasich and the state of Ohio because they have no legal duty to perform acts which would justify issuing a writ of mandamus. I dissent, however, from the decision of the majority to deny *400 mandamus as to Rick Simmers, the chief of the oil-and-gas-resources-management division of the Ohio Department of Natural Resources ("ODNR"), and James Zehringer, the director of ODNR ("collectively, the ODNR appellees") because in my view FreshWater Accountability Project ("FWAP"), and Food and Water Watch ("FWW") did in fact establish standing and each has a statutory duty pursuant to R.C. 1509.03(A) and 1509.22(C) to adopt rules for the operation of oil and gas wells and production facilities and to adopt rules regarding the storage, recycling, treatment, processing, and disposal of brine and other waste substances, and those duties can be compelled by the issuance of a writ of mandamus.
{¶ 34} Standing to bring an action is a question of law, which this court reviews de novo. Moore v. Middletown , 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 20.
{¶ 35} Before a court can consider the merits of a legal claim, a litigant must prove that it has standing to sue. ProgressOhio.org, Inc. v. JobsOhio , 139 Ohio St.3d 520, 2014-Ohio-2382, 13 N.E.3d 1101, ¶ 7. To establish standing, a litigant must show that it has "suffered (1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief." Moore at ¶ 22, citing Lujan v. Defenders of Wildlife , 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). An association has standing to sue on behalf of its members when its members would otherwise have standing to sue in their own right (assuming other requirements, not at issue here, are met). Ohio Contrs. Assn. v. Bicking , 71 Ohio St.3d 318, 320, 643 N.E.2d 1088 (1994). The ODNR appellees dispute whether FWAP proved any of the three requirements.
{¶ 36} The analysis is slightly different in a suit challenging the legality of the government's action or inaction toward a third party. When a plaintiff's claimed injury arises out of the government's allegedly unlawful failure to regulate someone else , the plaintiff must " 'adduce facts showing that [the exercise of discretion by the third party that has not been regulated has] been or will be made in such manner as to produce causation and permit redressability of injury.' " (Brackets added.) Clifton v. Blanchester , 131 Ohio St.3d 287, 2012-Ohio-780, 964 N.E.2d 414, ¶ 16, quoting Lujan at 562, 112 S.Ct. 2130.
{¶ 37} FWAP submitted three affidavits in support of its complaint-one from Cheryl Mshar, one from Hattie Wilkins, and one from David Barton Castle and Bobbie Sue Castle. In its memorandum opposing the motions for summary judgment, FWAP pointed to the Mshar, Wilkins, and Castle affidavits as evidence to support FWAP's organizational standing.
{¶ 38} A Tenth District Court of Appeals magistrate concluded that the Mshar, Wilkins, and Castle affidavits did not establish standing, because they failed to show "an injury that is concrete and not speculative [or] different from that suffered by the public in general." 2016-Ohio-3135, 2016 WL 2992651, ¶ 68. Two judges on the three-judge court of appeals panel adopted the magistrate's decision; in dissent, Judge Dorrian determined that FWAP had proved harm to a member but had failed to prove redressability.
{¶ 39} I disagree with both conclusions because in my opinion, the affidavit of Cheryl Mshar contained sufficient facts to establish standing. According to her affidavit, Mshar is a member of both FWW and FWAP. The house she owns and lives in is .82 miles from the plant operated by Industrial Waste Control/Ground Tech., Inc.
*401 ("IWC"). Mshar attests that she "can smell hydrocarbon stenches from the plant, a smell which [she] first noticed in 2014 after the company received" temporary authorization to operate its facility from Simmers, the chief of ODNR's oil-and-gas-resources-management division. She is "routinely forced to breathe polluted air" and believes that she and her family "are being involuntarily exposed to, and are breathing, chemically-polluted and radon-polluted air emitted from fracking waste delivered to or held at the facility as part of routine operations," which is exposing them to "unnecessary risks to personal health."
{¶ 40} The court of appeals considered Mshar's fears of exposure to toxic substances to be "speculation that is not evidence of an injury or harm." 2016-Ohio-3135, 2016 WL 2992651 at ¶ 92. But medical harm was not the only injury she alleged.
{¶ 41} An offensive odor alone can constitute injury. Banford v. Aldrich Chem. Co., Inc. , 126 Ohio St.3d 210, 2010-Ohio-2470, 932 N.E.2d 313, ¶ 26. The ODNR appellees distinguish Banford and similar cases as nuisance actions, arguing that even if Mshar's allegations regarding the smells emanating from the IWC plant constitute a concrete injury for purposes of a nuisance suit, those allegations are "not sufficient to establish injury for purposes of traditional standing." But the ODNR appellees cite no authority for the proposition that the nature of the direct injury necessary to establish standing varies depending on the relief sought (injunction, mandamus, or money damages).
{¶ 42} On its face, Mshar's affidavit alleges a sufficient injury to satisfy the first element of the standing analysis.
{¶ 43} The next step in the analysis is whether the litigant has shown that the alleged injury is fairly traceable to the allegedly unlawful conduct. The court of appeals deemed Mshar's affidavit inadequate because "there is no expert opinion or evidence to support the inference that the so-called 'hydrocarbon stenches' that she allegedly has smelled since 2014 are in fact causing her harm or injury." 2016-Ohio-3135, 2016 WL 2992651 at ¶ 90.
{¶ 44} Once again, the court of appeals failed to appreciate that Mshar was alleging two categories of harm, one medical, the other aesthetic. The offensive odor is itself an injury irrespective of whether it is affecting people's health. And Mshar satisfied the causation requirement by presenting evidence that the smell began just after IWC received authorization from the ODNR division chief and began operations. Whether or not the odor is also causing her medical harm would be relevant if this were a suit for compensatory damages, but it is not.
{¶ 45} In her concurring opinion, Judge Dorrian wrote that Mshar had failed to establish redressability, the third prong of the standing analysis, because she "did not allege how administrative rules, rather than the existing Chief's orders, would redress her injury." 2016-Ohio-3135, 2016 WL 2992651, at ¶ 10 (Dorrian, P.J., concurring in part and concurring in judgment). In fact, the complaint did contain an allegation of redressability:
33. The Chief acted unlawfully and unreasonably in approving the orders by failing to incorporate into them enforceable requirements for the operation of the facilities covered, and by failing to govern the potential final products of the various treatment processes. Consequently, ODNR is allowing unregulated contamination of the environment and endangerment of human health.
*402 34. By approving Chief's Orders as "temporary approvals" * * * without any but ad hoc regulatory criteria, the Chief cannot reasonably and lawfully conclude that the facilities he is allowing to operate will not cause adverse effects to public health and safety by contamination of water and air in the vicinity of the approved facilities.
{¶ 46} The case was decided on summary judgment, so the question was not whether the complaint alleged redressability but whether FWAP came forward with evidence to establish that issuing an order to compel the ODNR division chief to engage in rulemaking would alleviate the harm.
{¶ 47} R.C. 1509.03(A) mandates that the chief of the oil-and-gas-resources-management division of ODNR adopt rules for the operation of oil and gas wells and production facilities that address safety in well drilling and operations, protection of the public water supply, and containment and disposal of drilling and production waste. Also, R.C. 1509.22(C) directs the division chief to adopt rules regarding the storage, recycling, treatment, processing, and disposal of brine and other waste substances and to establish procedures and requirements governing permits for the handling of brine and other waste substances. Without such a permit, "no person shall store, recycle, treat, process, or dispose of in this state brine or other waste substances associated with the exploration, development, well stimulation, production operations, or plugging of oil and gas resources" after January 1, 2014. R.C. 1509.22(B)(2). Yet here, the division chief is systematically licensing facilities without issuing regulations to protect the public, in violation of a clear statutory duty. Thus, the injury in this case is redressable because absent promulgation of rules, the facilities will never be required to comply with any specific protections aimed at their operation, such as safeguarding the public water supply and containing drilling and production waste, which the statutes require the rules to address.
{¶ 48} As for redressability, the ODNR appellees argue that we cannot know for certain what regulations will result if the ODNR division chief engages in rulemaking-which necessarily means that we cannot know whether the regulations will remediate the odors and potentially hazardous condition. By that logic, the remediation element becomes an insurmountable obstacle to anyone seeking to compel a public official to act. If a public official has a mandatory duty to perform a task but discretion in how to perform that task, the ultimate form and effect of the official's action will always be unknown in advance, but that should not excuse the official's failure to carry out the duty.
{¶ 49} A redressability objection seems especially inappropriate in this case-one in which the ODNR appellees failed to meet their Civ.R. 56 burden. If they had come forward with evidence that the objectionable odors are endemic to the process and cannot or will not be lessened by proper regulations, then FWAP's claims might have trouble going forward. But there is no such evidence in the record.
{¶ 50} Given this conclusion, the sufficiency of the other two affidavits is moot.
{¶ 51} Accordingly, I would affirm in part and reverse in part the judgment of the court of the appeals and remand the cause for further proceedings.