[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Navistar, Inc. v. Indus. Comm.*, Slip Opinion No. 2020-Ohio-712.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-712

THE STATE EX REL. NAVISTAR, INC., APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Navistar, Inc. v. Indus. Comm.*, Slip Opinion No. 2020-Ohio-712.]**

*Workers' compensation—Voluntary abandonment is an affirmative defense—If evidence of voluntary abandonment has been brought into issue, a hearing officer's failure to address the issue constitutes a mistake of law—The employer has the burden to raise and produce evidence of voluntary abandonment—Court of appeals' judgment denying writ of mandamus affirmed.*

(No. 2018-1416—Submitted October 2, 2019—Decided March 4, 2020.)

APPEAL from the Court of Appeals for Franklin County, No. 16AP-776, 2018-Ohio-3386.

_____

**Per Curiam.**

{¶ 1} Appellee Industrial Commission of Ohio granted the request of appellee Gary E. Bisdorf for permanent-total-disability ("PTD") compensation. The Tenth District Court of Appeals denied the request of Bisdorf's former employer, appellant, Navistar, Inc., for a writ of mandamus ordering the commission to vacate the PTD-compensation award. Navistar appealed that judgment and moved for oral argument. During the pendency of the case before this court, Bisdorf died. We ordered Navistar to show cause why its appeal should not be dismissed as moot. Navistar responded with a motion to continue (i.e., proceed with) the case, which we grant. We affirm the Tenth District's judgment and deny Navistar's request for oral argument.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Bisdorf sustained two industrial injuries during his 30 years of employment as an assembler with Navistar. His 1971 knee injury and 2001 shoulder injury both resulted in approved workers' compensation claims and multiple surgeries. Bisdorf retired from Navistar in 2003 but worked part-time as a sales associate and firearms instructor at a gun store from 2004 to 2010.

{¶ 3} During his employment at the gun store, Bisdorf applied for a period of temporary-total-disability ("TTD") compensation for knee surgery related to his 1971 injury. The commission determined that Bisdorf had voluntarily retired from Navistar but had rejoined the workforce by accepting employment at the gun store, and it granted his request for TTD compensation. Bisdorf returned to work, but the gun store closed in 2010, and he did not seek new employment.

{¶ 4} In 2015, Bisdorf applied for PTD compensation. After a hearing before a staff hearing officer ("SHO"), the commission granted Bisdorf's application. Navistar moved for reconsideration, arguing that the commission had failed to consider evidence of Bisdorf's voluntary retirement and that the commission had relied on two medical reports—by Drs. James Rutherford and

David Grunstein—that Navistar claimed were conclusory and contradictory. The commission denied Navistar's request for reconsideration.

{¶ 5} Navistar asked the Tenth District for a writ of mandamus ordering the commission to vacate its prior orders and to enter a new order denying Bisdorf's PTD-compensation application. Navistar asserted that the commission had abused its discretion in numerous ways, including by awarding PTD compensation without first ruling on whether Bisdorf had voluntarily abandoned his employment and by relying on the reports by Drs. Rutherford and Grunstein.

{¶ 6} The Tenth District's magistrate initially recommended that the court grant a limited writ ordering the commission to consider whether Bisdorf had voluntarily abandoned his employment. 2017-Ohio-8976, ¶ 2. But the court sustained the commission's objections to the magistrate's recommendation and held that Navistar had failed to raise the issue of voluntary abandonment before the SHO. *Id*. at ¶ 20-24. The court therefore returned the case to the magistrate to consider the remaining issues that Navistar had asserted. *Id*. at ¶ 29. After doing so, the magistrate recommended that the court deny the writ. 2018-Ohio-3386, ¶ 3. Navistar objected, but the court overruled Navistar's objections and adopted the magistrate's recommendation. *Id*. at ¶ 10. Navistar appealed the Tenth District's judgment to this court and moved for oral argument.

{¶ 7} On July 30, 2019, after briefing in this court was complete, Bisdorf's counsel filed a suggestion of death indicating that Bisdorf had died on July 8. We ordered Navistar to show cause why the case should not be dismissed as moot, and we permitted appellees to respond to Navistar's filing. 156 Ohio St.3d 1491, 2019-Ohio-3263, 129 N.E.3d 474. In response to the show-cause order, Navistar filed a motion to continue (i.e., proceed with) the case. The Industrial Commission and counsel for Bisdorf filed responses to Navistar's motion.

## II. ANALYSIS

### A. State of the Case After Bisdorf's Death

{¶ 8} Navistar asserts two reasons why we should proceed to decide the case. First, citing *Youghiogheny & Ohio Coal Co. v. Mayfield*, 11 Ohio St.3d 70, 464 N.E.2d 133 (1984), it argues that an employer's appeal from an adverse decision by the commission is not subject to dismissal due to a claimant's death. Second, without citing any authority, it argues that "the case should continue due to the precedential value of the two issues to be determined." The second argument is without merit. As the commission notes in its response, we do not issue advisory opinions. *See*, *e.g.*, *State ex rel. Food & Water Watch v. State*, 153 Ohio St.3d 1, 2018-Ohio-555, 100 N.E.3d 391, ¶ 29.

{¶ 9} As to the first argument, while an injured worker's claim for benefits abates upon his death, Ohio Adm.Code 4123-5-21, this court held in *Youghiogheny* that "[a]n employer's appeal, pursuant to R.C. 4123.519, from an adverse ruling by the Industrial Commission is not subject to dismissal due to the death of the employee during the pendency of the appeal," *id*. at syllabus. In reaching this conclusion, this court reasoned that under former R.C. 4123.519, the employer was entitled to recover from the state surplus fund any benefits that had been improperly disbursed to the claimant before his death. *Id*. at 72. The state (which was already a party to the proceedings in the form of the Administrator of the Bureau of Workers' Compensation) therefore became a real party in interest and could proceed in place of the claimant to protect the surplus fund. *Id*.

{¶ 10} In response to Navistar's motion, the commission asserts that *Youghiogheny* does not apply here because that case involved a direct appeal to the court of common pleas under former R.C. 4123.519 (now R.C. 4123.512), while this case involves an original action in mandamus. But this distinction is of no import, because the reasoning underlying this court's conclusion in *Youghiogheny* applies equally to a mandamus action. R.C. 4123.512(H)(1) broadly provides, "If,

in *a final administrative or judicial action*, it is determined that payments of compensation or benefits, or both, made to or on behalf of a claimant should not have been made, the amount thereof shall be charged to the [state] surplus fund account." (Emphasis added.) The plain language of this statute encompasses actions in mandamus such as this. *Youghiogheny*'s framing of its holding in terms of an appeal reflected the facts of that particular case, not a statutory limitation.

{¶ 11} Notably however, since 2006, self-insured employers like Navistar have had the ability to opt out of participation in the state surplus fund, and if they do opt out, then they are not entitled to reimbursement from the fund. *See* R.C. 4123.512(H)(3); Am.Sub.S.B. No. 7, 151 Ohio Laws, Part I, 1019, 1071-1072 (amending R.C. 4123.512(H)). The record before this court does not indicate whether Navistar opted out of participation in the fund.

{¶ 12} But regardless of whether it participates in the surplus fund, Navistar, as a self-insured employer, must pay to the state an annual assessment to the safety-and-hygiene fund and must also pay administrative costs. R.C. 4123.35(J). The amount of each assessment depends on the amount that Navistar paid out in workers' compensation benefits during the prior year. *Id*. And "any amount that is determined not to have been payable to * * * a claimant in any final administrative or judicial proceeding," R.C. 4123.35(L), may be excluded from the employer's paid compensation for the year, Ohio Adm.Code 4123-17-32(B). *See also* R.C. 4123.512(H)(1). The outcome of this appeal will therefore affect the amount of the assessment that Navistar is required to pay to the state. Accordingly, as in *Youghiogheny*, 11 Ohio St.3d 70, 464 N.E.2d 133, a continuing controversy remains and the commission's arguments on the merits serve to protect the state's interests in Navistar's annual assessment (and the surplus fund, if applicable). We therefore proceed to the merits of Navistar's appeal.

## B. Mandamus Standard

{¶ 13} Mandamus relief is appropriate only if the relator establishes "a clear legal right to the relief requested, a clear legal duty on the part of the commission * * * to provide the relief, and the lack of an adequate remedy in the ordinary course of the law." *State ex rel. Baker v. Indus. Comm.*, 143 Ohio St.3d 56, 2015-Ohio-1191, 34 N.E.3d 104, ¶ 12. In matters before it, the commission is the exclusive evaluator of the weight and credibility of the evidence. *State ex rel. LTV Steel Co. v. Indus. Comm.*, 88 Ohio St.3d 284, 287, 725 N.E.2d 639 (2000). Therefore, "[t]o be entitled to an extraordinary remedy in mandamus, the relator must demonstrate that the [commission] abused its discretion by entering an order not supported by any evidence in the record." *State ex rel. WFAL Constr. v. Buehrer*, 144 Ohio St.3d 21, 2015-Ohio-2305, 40 N.E.3d 1079, ¶ 12. The relator must make that showing by clear and convincing evidence. *Id.*

## C. Navistar's Propositions of Law

{¶ 14} Navistar asserts three propositions of law. First, it argues that the commission abused its discretion by failing to address evidence of Bisdorf's voluntary retirement. Second, it argues that the reports of Drs. Rutherford and Grunstein show that Bisdorf could have worked four hours a day and that the commission abused its discretion by failing to consider various nonmedical factors (e.g., Bisdorf's age, education, and work record) before concluding that Bisdorf could not engage in sustained remunerative employment. And third, it argues that Dr. Rutherford's opinion is conclusory and contradictory and that the commission abused its discretion by relying on it. We reject the first two arguments and do not reach the third.

### 1. Voluntary abandonment

{¶ 15} "A claimant's eligibility for permanent-total-disability compensation may be affected if the claimant has voluntarily retired or abandoned the job market for reasons not related to the industrial injury." *State ex rel. Black*

*v. Indus. Comm.*, 137 Ohio St.3d 75, 2013-Ohio-4550, 997 N.E.2d 536, ¶ 14. Ohio Adm.Code 4121-3-34(D), which provides guidelines that "shall be followed" by the adjudicator of an application for PTD compensation, states:

> If, after hearing, the adjudicator finds that the injured worker voluntarily removed himself or herself from the work force, the injured worker shall be found not to be permanently and totally disabled. If evidence of voluntary removal or retirement is *brought into issue*, the adjudicator shall consider evidence that is submitted of the injured worker's medical condition at or near the time of removal/retirement.

(Emphasis added.) Ohio Adm.Code 4121-3-34(D)(1)(d). Navistar's first proposition of law asserts that this regulation requires a hearing officer who is adjudicating a claim for PTD compensation to consider evidence of a claimant's nondisability retirement and to address the issue of voluntary abandonment in the subsequent order.

{¶ 16} However, the existence of that obligation depends on whether evidence of voluntary abandonment has been *brought into issue*. As we have explained, "[b]ecause voluntary abandonment of all employment is an affirmative defense and an issue critical to eligibility for compensation for permanent total disability, if evidence of voluntary abandonment has been brought into issue, a hearing officer's failure to address the issue constitutes a mistake of law." *State ex rel. Stevens v. Indus. Comm.*, 142 Ohio St.3d 313, 2015-Ohio-1352, 29 N.E.3d 972, ¶ 17, citing Ohio Adm.Code 4121-3-34(D)(1)(d). Conversely, however, the Tenth District has concluded that if the defense of voluntary abandonment has *not* been brought into issue at the SHO hearing, then it is an abuse of the hearing officer's discretion to address it, because the claimant has not been afforded due process,

i.e., sufficient notice and an opportunity to present evidence on the issue. *State ex rel. Jenkins v. Indus. Comm.*, 2017-Ohio-7896, 98 N.E.3d 944, ¶ 5 (10th Dist.). Similarly, in *State ex rel. Quarto Mining Co. v. Foreman*, an employer argued that the commission had abused its discretion by failing to initiate the issue whether voluntary abandonment precluded PTD compensation. 79 Ohio St.3d 78, 81-83, 679 N.E.2d 706 (1997). This court refused to relax the rule that issues not previously raised are waived and will not be considered by a reviewing court. *Id*. This court went on to explain that relaxing that rule would "deny the claimant a meaningful opportunity to respond," *id*. at 82, and "forc[e] an already overworked commission to comb the files of every PTD case in search of issues that could potentially be raised by both sides at the hearing table," *id*. at 82-83.

{¶ 17} The question is, therefore, whether Navistar brought evidence of voluntary abandonment into issue at the SHO hearing. While Navistar presented no *argument* regarding voluntary abandonment to the commission prior to its motion for reconsideration, Navistar asserts that it brought voluntary abandonment into issue by presenting "written evidence and testimony related to the subject" at the SHO hearing. However, this court rejected the same argument in *Quarto Mining*. In that case, the employer argued that the issue of voluntary abandonment "raises itself by virtue of being manifest in the record." *Id*. at 81. This court disagreed, stating that the employer has the burden "to raise *and* produce evidence on its claim that other circumstances independent of the claimant's allowed conditions caused him to abandon the job market." (Emphasis added.) *Id*. at 84.

{¶ 18} Navistar attempts to distinguish *Quarto Mining* by pointing out that the employer in that case first raised the issue of voluntary abandonment in a petition for a writ of mandamus, while Navistar first argued the issue in its motion for reconsideration before the commission. That distinction makes no difference: either way, the claimant has been denied the opportunity to present evidence on the issue. *See Jenkins* at ¶ 5; *see also Quarto Mining* at 81-82. The purpose of

reconsideration of a hearing officer's order is to address new or changed circumstances, fraud, clear mistakes of law or fact, or errors by the hearing officer—not to permit a party to present additional arguments or evidence that could have been presented at the hearing. *See* Industrial Commission Resolution No. R08-1-01. In its motion for reconsideration, Navistar argued that the commission had made a mistake of law by not addressing voluntary abandonment, but, as explained above, that argument contradicts *Quarto Mining*.

{¶ 19} Navistar did no more than the employer in *Quarto Mining*: it merely presented evidence that could relate to voluntary abandonment and then waited for the SHO to "initiate the issue," *Quarto Mining*, 79 Ohio St.3d at 83, 679 N.E.2d 706. Navistar has not shown by clear and convincing evidence that it brought Bisdorf's alleged voluntary abandonment into issue at the SHO hearing. Accordingly, we reject Navistar's first proposition of law.

### 2. Four-hour work day

{¶ 20} " 'Permanent total disability' means the inability to perform sustained remunerative employment due to the allowed conditions in the claim." Ohio Adm.Code 4121-3-34(B)(1). In its second proposition of law, Navistar argues that Bisdorf could have worked four hours a day and that *State ex rel. Bonnlander v. Hamon*, 150 Ohio St.3d 567, 2017-Ohio-4003, 84 N.E.3d 1004, therefore required the commission to consider various nonmedical factors before granting Bisdorf's request for PTD compensation. *See State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167, 173, 509 N.E.2d 946 (1987) (identifying age, education, and work record as relevant nonmedical factors).

{¶ 21} However, the commission is the exclusive finder of fact in workers' compensation matters. *State ex rel. Vonderheide v. Multi-Color Corp.*, 156 Ohio St.3d 403, 2019-Ohio-1270, 128 N.E.3d 188, ¶ 7. And the commission did *not* find that Bisdorf could have worked four hours a day. On the contrary, it found that Bisdorf was incapable of performing *any* sustained remunerative employment

solely as a result of the medical impairments from his allowed physical conditions. Accepting Navistar's argument would require us to reject that factual determination and substitute a new finding that Bisdorf was able to work four hours a day—an improper invasion of the commission's role as the exclusive fact-finder.

{¶ 22} In addition, *Bonnlander* is inapposite. In *Bonnlander*, we rejected an argument that the ability to work at least four hours a day necessarily means that the claimant can engage in sustained remunerative employment. *Bonnlander* at ¶ 13-14, 20. Rather, we held that "there is no hourly standard for determining one's capability to perform sustained remunerative employment on a part-time basis. The commission decides whether a claimant is capable of sustained remunerative employment on a case-by-case basis." *Id*. at ¶ 20.

{¶ 23} Unlike in this case, the commission in *Bonnlander* found that the claimant *could* work up to four hours per day. 150 Ohio St.3d 567, 2017-Ohio-4003, 84 N.E.3d 1004, at ¶ 5. The commission then considered the nonmedical factors listed in *Stephenson*, 31 Ohio St.3d at 173, 509 N.E.2d 946, and denied the claimant's request for PTD compensation. *Bonnlander* at ¶ 6. While the commission may not *deny* PTD compensation without considering nonmedical factors, it may *grant* PTD compensation without considering nonmedical factors when "medical factors alone preclude sustained remunerative employment." *State ex rel. Galion Mfg. Div., Dresser Industries, Inc. v. Haygood*, 60 Ohio St.3d 38, 40, 573 N.E.2d 60 (1991). That is what occurred here: the commission concluded based on medical evidence that Bisdorf could not work at all. Navistar's argument that the commission was required to consider the *Stephenson* nonmedical factors is therefore not well-taken. Accordingly, we reject Navistar's second proposition of law.

*3. Dr. Rutherford's opinion*

{¶ 24} "[E]quivocal medical opinions are not evidence." *State ex rel. Eberhardt v. Flxible Corp.*, 70 Ohio St.3d 649, 657, 640 N.E.2d 815 (1994).

"[E]quivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement." *Id.* In its third proposition of law, Navistar argues that Dr. Rutherford's opinion is equivocal on the question whether Bisdorf could have engaged in sustained remunerative employment and that the commission abused its discretion by relying on Dr. Rutherford's opinion. However, this argument is immaterial, because the commission relied on the reports of both Dr. Rutherford *and* Dr. Grunstein, and even if we were to exclude Dr. Rutherford's report as equivocal, Dr. Grunstein's report would constitute some evidence supporting the commission's conclusion that Bisdorf was incapable of sustained remunerative employment. *See State ex rel. Ehlinger v. Indus. Comm.*, 76 Ohio St.3d 400, 402, 667 N.E.2d 1210 (1996). Accordingly, we do not reach Navistar's third proposition of law.

### D. Oral Argument

{¶ 25} In a direct appeal such as this, the granting of a request for oral argument is subject to this court's discretion. S.Ct.Prac.R. 17.02(A). We typically do not grant a request for oral argument unless the case involves (1) a matter of great public importance, (2) complex issues of law or fact, (3) a substantial constitutional issue, or (4) a conflict among courts of appeals. *See State ex rel. BF Goodrich Co., Specialty Chems. Div. v. Indus. Comm.*, 148 Ohio St.3d 212, 2016-Ohio-7988, 69 N.E.3d 728, ¶ 23. Navistar's motion for oral argument does not address any of the above factors; Navistar argues only that the court of appeals erred and misapplied the law. We therefore deny the motion for oral argument.

### III. CONCLUSION

{¶ 26} For these reasons, we grant Navistar's motion to continue the case, affirm the judgment of the Tenth District Court of Appeals, and deny Navistar's motion for oral argument.

Motion to continue granted
and judgment affirmed.

O'CONNOR, C.J., and FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

KENNEDY, J., dissents, with an opinion.

_____

**KENNEDY, J., dissenting.**

{¶ 27} The narrow issue before this court is when and how an employer must raise the defense of voluntary abandonment of employment when an injured worker requests permanent-total-disability ("PTD") compensation.

{¶ 28} In this case, the Tenth District Court of Appeals determined that appellant, Navistar, Inc., failed to present clear and convincing evidence that at an administrative hearing before a staff hearing officer ("SHO"), it had raised a defense asserting that appellee Gary E. Bisdorf had voluntarily abandoned the workforce, precluding him from receiving PTD compensation. Citing *State ex rel. Jenkins v. Indus. Comm.*, 10th Dist. No. 16AP-534, 2017-Ohio-7896, ¶ 3-5, the Tenth District held that voluntary retirement or abandonment of the workforce is an affirmative defense and may not be raised in the first instance in a motion for reconsideration. Rather, the court of appeals held that that defense must be raised at the hearing in front of appellee Industrial Commission of Ohio. The Tenth District further held that because Navistar failed to assert at the hearing that Bisdorf had voluntarily retired or abandoned the workforce, Navistar waived the ability to assert that defense in its complaint for a writ of mandamus. Although the magistrate found that Navistar had "clearly raised" the issue before the commission and that the commission had had a duty to address it, 2017-Ohio-8976, ¶ 77, the Tenth District rejected that finding and returned the case to the magistrate for rulings on additional assertions made by Bisdorf, *id*. at ¶ 22-23. The Tenth District did not address the merits of Navistar's voluntary-abandonment argument.

{¶ 29} However, there are no pleading requirements, magic words, or talismanic incantations needed to assert that an injured worker voluntarily

abandoned the workforce. At Bisdorf's PTD hearing, he testified that after working at Navistar for 30 years, he voluntarily retired. Subsequently, he worked part-time at a gun store for approximately six years. Bisdorf stopped working for reasons unrelated to his workplace injury when the gun store closed, which occurred approximately *five years before* he sought PTD compensation. At the hearing, counsel for Navistar argued that Bisdorf had taken "regular retirement" and that he was able to work while at the gun store and remained capable of working afterwards. The record reflects that Navistar sufficiently raised the defense that Bisdorf voluntarily retired or abandoned the workforce before becoming permanently and totally disabled, and the SHO made a clear mistake of law in failing to address that issue, warranting reconsideration by the commission.

{¶ 30} Because the commission abused its discretion in failing to consider evidence in the record indicating that Bisdorf voluntarily retired or otherwise abandoned all employment before becoming permanently and totally disabled, I would reverse the judgment of the Tenth District Court of Appeals and issue a writ of mandamus directing the commission to vacate its award of PTD compensation.

{¶ 31} Because the majority holds otherwise, I dissent.

{¶ 32} R.C. 4123.54(A) provides that an injured worker "is entitled to receive the compensation for loss sustained on account of the injury" as provided by R.C. Chapter 4123. Relying on this language, we have explained that "[f]or purposes of compensability, a causal relationship must exist between the employee's industrial injury and the loss that the requested benefit is designed to compensate." *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, ¶ 35. Therefore, in seeking PTD compensation, the claimant has the burden "to establish that the disability is permanent and that the inability to work is causally related to the allowed conditions." *State ex rel. Sheppard v. Indus. Comm.*, 139 Ohio St.3d 223, 2014-Ohio-1904, 11 N.E.3d 231, ¶ 16.

{¶ 33} This court has recognized that "[v]oluntary retirement precludes [PTD] compensation." *State ex rel. Crisp v. Indus. Comm.*, 64 Ohio St.3d 507, 508, 597 N.E.2d 119 (1992). A claimant who retires or otherwise voluntarily abandons employment for reasons unrelated to his or her injury cannot receive PTD compensation, because it is the claimant's own action, not the workplace injury, that prevents the claimant from engaging in sustained remunerative employment. *State ex rel. Chrysler Corp., v. Indus. Comm.*, 62 Ohio St.3d 193, 196, 580 N.E.2d 1082 (1991). In those circumstances, the injury is not the proximate cause of the inability to work. *Sheppard* at ¶ 20; *see also State ex rel. Reliance Elec. Co. v. Wright*, 92 Ohio St.3d 109, 748 N.E.2d 1105 (2001) ("pre-PTD voluntary abandonment of the labor force can be perceived as an intervening act that breaks the nexus between an allowed condition and PTD").

{¶ 34} The administrative rules adopted by the commission align with this precedent. Ohio Adm.Code 4121-3-34(D)(3)(a) places the burden on the injured worker to prove by a preponderance of the evidence that "the disability is permanent and that the inability to work is causally related to the allowed conditions." Further, under Ohio Adm.Code 4121-3-34(D)(3)(b), the SHO must determine whether "the inability to work is due to the allowed conditions in the claim," and under Ohio Adm.Code 4121-3-34(D)(3)(g), the SHO must "review all relevant factors in the record that may affect the injured worker's ability to work." That includes considering whether a claimant's inability to work has resulted from retirement or other voluntary abandonment of employment; Ohio Adm.Code 4121-3-34(D)(1)(d) states that "[i]f, after hearing, the adjudicator finds that the injured worker voluntarily removed himself or herself from the work force, the injured worker *shall* be found *not* to be permanently and totally disabled." (Emphasis added.)

{¶ 35} Although this court has determined that retirement or other voluntary abandonment of employment breaks the chain of cause and effect that is necessary

to prove that a loss of employment resulted from a workplace injury, *McCoy*, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, at ¶ 36, this court has nonetheless rejected the argument that "since it is [the] claimant's burden to prove that his disability is causally related to allowed conditions in the claim, it is necessarily [the] claimant's burden to prove that nonallowed conditions played no part in his decision to retire," *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 83, 679 N.E.2d 706 (1997). Rather, we concluded that "[t]he burden should * * * properly fall upon the employer to raise and produce evidence on its claim that other circumstances independent of the claimant's allowed conditions caused him to abandon the job market." *Id*. at 84. And for that reason, "the commission, in evaluating a claimant's application for PTD compensation, does not abuse its discretion by failing to initiate the issue whether claimant's retirement precludes his or her eligibility for PTD compensation." *Id*.

{¶ 36} More recent cases have also described voluntary abandonment as an affirmative defense, meaning that the burden of proof is on the employer to raise and establish it. *See State ex rel. Pacheco v. Indus. Comm.*, 157 Ohio St.3d 126, 2019-Ohio-2954, 132 N.E.3d 670, ¶ 26; *State ex rel. Stevens v. Indus. Comm.*, 142 Ohio St.3d 313, 2015-Ohio-1352, 29 N.E.3d 972, ¶ 17. Navistar does not challenge the appellate court's characterization of voluntary retirement or abandonment of employment as an affirmative defense, and we need not revisit that question to decide this case.

{¶ 37} Assuming that voluntary retirement or abandonment of employment is an affirmative defense, the administrative rules do not impose any pleading requirement for asserting it. For example, either party may request a prehearing conference, Ohio Adm.Code 4121-3-34(C)(7), and at such a conference, each party must be prepared to discuss evidence, if any, related to the injured worker's retirement and refusal to work, Ohio Adm.Code 4121-3-34(C)(8)(a) and (b). The rule also states that the failure to request a prehearing conference or to raise a

defense at one "does not act to waive any assertion, argument, or defense that may be raised at a hearing held under paragraphs (D) and (E)," Ohio Adm.Code 4121-3-34(C)(7), including the defense of voluntary abandonment, Ohio Adm.Code 4121-3-34(D)(1)(d). And although Ohio Adm.Code 4121-3-34 provides a specific procedure for reviewing applications for PTD compensation, it makes no other reference to how or when defenses must be raised or preserved. Unlike the Rules of Civil Procedure, the administrative rules do not include any formal requirements for pleading a defense.

{¶ 38} And we have never required magic words or talismanic incantations to assert an affirmative defense in workers' compensation cases. Rather, the employer is required to "raise and produce evidence," *Quarto Mining Co.*, 79 Ohio St.3d at 84, 679 N.E.2d 706, that is sufficient to put the claimant on notice that the defense is at issue in order to allow "the claimant a meaningful opportunity to respond," *id*. at 82.

{¶ 39} In this case, the evidence presented and the arguments raised created a question of fact regarding whether Bisdorf severed the causal connection between his workplace injury and his loss of sustained remunerative employment by retiring and voluntarily abandoning all employment. Bisdorf testified that he had retired from Navistar after working 30 years, and the commission previously found that he had voluntarily retired in February 2003. He also testified that he could have continued working, but he "was spending more time on the table getting operated on than [he] was working." Although he was not looking for a new job and "considered [himself] retired," he began working part-time as a sales associate and firearms instructor at a gun store in May 2004. He stopped working at the gun store when it went out of business in September 2010—not because he was incapable of performing his job duties—and he did not look for another place of employment. Bisdorf did not specifically testify that his lack of employment after the gun store closed was due to his prior workplace injuries, but in any case, there is no medical

evidence in the record that he was permanently and totally disabled at the time he stopped working at the gun store or at any time during the next five years. Dr. David M. Grunstein, a chiropractic physician, examined Bisdorf in October 2015 and found him to be permanently and totally disabled. Based on Dr. Grunstein's report, Bisdorf requested PTD compensation commencing on the date of that exam.

{¶ 40} In summation at the hearing before the SHO, counsel for Navistar pointed out that Bisdorf had taken "regular retirement" and had been able to continue working at the gun store for six years. Pointing to another medical report, counsel stated that at the time of Bisdorf's retirement and during the time that he worked at the gun store, his allowed conditions "had improved significantly." Counsel also pointed to evidence that Bisdorf was still capable of doing sedentary work. While counsel did not use the magic words "voluntary retirement or other abandonment of all employment," the import of his argument was that at the time Bisdorf stopped working and long afterward, he was not permanently and totally disabled.

{¶ 41} A hearing officer is required to " 'specifically state what evidence has been relied upon in reaching the conclusion.' " *State ex rel. Penske Truck Leasing Co., L.P. v. Indus. Comm.*, 153 Ohio St.3d 133, 2018-Ohio-2153, 101 N.E.3d 456, ¶ 12, quoting Ohio Adm.Code 4121-3-34(D)(3)(h). But in granting Bisdorf PTD compensation, the SHO's order stated only, "Based upon the reports of James Rutherford, M.D., dated 03/15/2016, and David Grunstein, D.C., dated 10/22/2015, it is found that the Injured Worker is unable to perform any sustained remunerative employment solely as a result of the medical impairment caused by the allowed physical conditions." However, neither of those reports provided any medical evidence that the allowed conditions prevented Bisdorf from working after the gun store closed in September 2010. Tellingly, the commission awarded compensation beginning in October 2015, even though Bisdorf had stopped working more than five years earlier, and the order points to no evidence that the

workplace injury prevented him from seeking other employment after the gun store closed. The order simply ignores this gap in the record.

{¶ 42} PTD compensation may not be granted unless the injured worker has met his or her burden to prove that the allowed conditions caused the inability to work. Ohio Adm.Code 4121-3-34(D)(3)(a) and (b). And when evidence presented at the hearing indicates that the injured worker retired or otherwise voluntarily abandoned employment for reasons unrelated to the injury, that evidence must be considered and weighed by the hearing officer in deciding whether proximate cause was established. *See Sheppard*, 139 Ohio St.3d 223, 2014-Ohio-1904, 11 N.E.3d 231, at ¶ 21 (explaining that the hearing officer is required address voluntary abandonment, proximate cause, and "all relevant factors in the record that may affect the claimant's ability to work").

{¶ 43} In my view, Navistar sufficiently presented and preserved the argument that Bisdorf voluntarily abandoned the workforce before he became permanently and totally disabled. If the majority believes that the evidence and argument presented at the hearing was insufficient, then what is sufficient? This court should provide guidance to practitioners and the commission regarding what words an employer must say in order to trigger the commission's duty to consider evidence that the injured worker voluntarily retired or otherwise abandoned employment. If magic words or a talismanic incantation are needed, the court should say so. If the majority believes that notice in writing before the hearing is required, then it should say that and the commission should include the requirement in Ohio Adm.Code 4121-3-34. However, the majority falls short of telling practitioners and parties what is expected of them going forward, and they should take notice that the failure to use the right language at the hearing could foreclose any finding that the injured worker voluntarily retired or abandoned employment, no matter how strong the evidence of it in the record is.

{¶ 44} During the SHO hearing, Navistar presented the commission with evidence that Bisdorf had voluntarily retired from the workforce before he became permanently and totally disabled. And that issue should have been addressed when Navistar filed its motion for reconsideration. The commission abused its discretion by failing to determine whether Bisdorf had voluntarily removed himself from the workforce and whether he was ineligible for PTD compensation for that reason.

{¶ 45} Therefore, I would reverse the judgment of the court of appeals and issue a writ of mandamus ordering the commission to vacate its award of PTD compensation.

——————————

Vorys, Sater, Seymour & Pease, L.L.P., and Corrine S. Carman, for appellant.

Dave Yost, Attorney General, and Kevin J. Reis, Assistant Attorney General, for appellee Industrial Commission of Ohio.

Stanley R. Jurus Law Office and Michael J. Muldoon, for appellee Gary E. Bisdorf.

——————————