[Cite as *State ex rel. Davis v. Indus. Comm.*, 2025-Ohio-5152.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Peggy L. Davis, | : | |
| Relator, | : | No. 24AP-431 |
| v. | : | (REGULAR CALENDAR) |
| [Industrial Commission of Ohio] et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on November 13, 2025

**On brief:** *Spears & Marinakis, LLC*, and *David R. Spears*, for relator.

**On brief:** *Dave Yost,* Attorney General, and *Anna Isupova*, for Industrial Commission of Ohio.

**On brief:** *Reminger Co., L.P.A.*, and *Brandon Abshier*, for Ohio Department of Transportation.

IN MANDAMUS
ON RESPONDENT'S OBJECTIONS

MENTEL, J.

{¶ 1} Relator, Peggy L. Davis, brings this original action seeking a writ of mandamus ordering the respondent, Industrial Commission of Ohio ("commission"), to vacate its prior orders concerning her third application and grant her permanent total disability compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate.

{¶ 3} On August 5, 2025, the magistrate issued the appended decision, including findings of fact and conclusions of law, recommending we grant a limited writ of mandamus

returning this matter to the commission for further proceedings. The magistrate found that in the order denying Davis's third application for permanent total disability compensation, the staff hearing officer ("SHO") made multiple findings concerning circumstances that were not present at the time of Davis's third application. (Appended Mag.'s Decision at 21.) The magistrate then cited the SHO's finding that Davis "did not present sufficient evidence at the hearing of any **meaningful or substantial** new and changed circumstances which would allow the Industrial Commission to consider [Davis's] subsequent third IC-2 Application." (Emphasis in original.) (Appended Mag.'s Decision at 21.) The magistrate found that because R.C. 4123.58 requires only that a claimant "present **evidence** of new and changed circumstances before the industrial commission may consider a subsequent application" for permanent total disability, the commission held Davis to a heightened burden by adding language to the statute's requirement. (Emphasis in original.) (Appended Mag.'s Decision at 21.) The magistrate concluded that because the SHO applied a heighted standard from that required by R.C. 4123.58(G) in evaluating whether Davis had met her burden under the statute, the commission committed legal error. (Appended Mag.'s Decision at 22.) The magistrate recommended that this matter be remanded to the commission for it to make findings regarding R.C. 4123.58(G) under the proper legal standard. Finally, the magistrate found that "because the commission must consider the evidence presented by Davis under the correct legal standard, it is not necessary at this time to resolve whether the evidence satisfies the requirements of R.C.4123.58(G)." (Appended Mag.'s Decision at 24.)

{¶ 4} The commission filed an objection to the magistrate's decision writing:

> The magistrate erred in finding that the commission applied an incorrect or heightened legal standard in determining that Ms. Davis failed to meet the requirements of R.C. 4123.58(G).

(Obj. at 2.)

{¶ 5} Pursuant to Civ.R. 53(D)(4)(d), we undertake an independent review of the objected matters "to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." We may adopt or reject a magistrate's decision in whole or in part, with or without modification.

{¶ 6} The commission contends that the SHO's order consisted of a "stray comment and harmless error." (Obj. at 3.) We disagree. As noted by the magistrate, neither a court nor a commission may add words when interpreting a statute. *State v. Hughes*, 86 Ohio St.3d 424, 429 (1999). It is apparent from the plain language of the statute that Davis was only required to "present **evidence** of new and changed circumstances before the industrial commission may consider a subsequent application filed by the claimant for compensation under this section for the same injury or occupational disease identified in the previous application." (Emphasis added.) R.C. 4123.58(G). We find the additional language provided by the SHO is wholly absent from R.C. 4123.58(G) and amounts to a heightened burden that is not found in the statute. We agree with the magistrate that the order amounts to legal error that requires a limited writ of mandamus for the commission to reconsider this case under the proper standard, as articulated in this decision.

{¶ 7} Upon review of the magistrate's decision, an independent review of the record, and due consideration of the commission's objection, we find the magistrate has properly determined the facts and applied the law. We therefore overrule the commission's sole objection and adopt the magistrate's decision, including the findings of fact and conclusions of law. Accordingly, we grant a limited writ of mandamus remanding this matter back to the commission for it to make findings regarding R.C. 4123.58(G) under the proper legal standard.

*Objection overruled*;
*limited writ of mandamus granted.*

BEATTY BLUNT and EDELSTEIN, JJ., concur.

_____

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Peggy L. Davis,                      :

        Relator,                                        :

v.                                                                              No.  24AP-431

                                                        :

Ohio Industrial Commission et al.,            :                      (REGULAR CALENDAR)

        Respondents.                                :

                                                        :

M A G I S T R A T E ' S   D E C I S I O N

Rendered on August 5, 2025

*David R. Spears*, for relator.

*Dave Yost*, Attorney General, and *Anna Isupova*, for respondent Industrial Commission of Ohio.

*Reminger Co., L.P.A.*, and *Brandon Abshier,* for respondent Ohio Department of Transportation.

IN MANDAMUS

{¶ 8} Relator Peggy L. Davis has applied for permanent total disability compensation three times. Respondent Industrial Commission of Ohio ("commission") denied Davis's first application in 2017 on the basis that Davis was capable of sustained remunerative employment. Davis's second application was denied in 2019 for the same reason. In 2024, the commission denied Davis's third application on the basis that Davis failed to meet the requirements of R.C. 4123.58(G) for the adjudication of a subsequent application for permanent total disability compensation.

{¶ 9} In this matter, Davis requests a writ of mandamus ordering the commission to vacate its prior orders regarding her third application and grant Davis permanent total

disability compensation. For the following reasons, the magistrate recommends granting a limited writ returning this matter to the commission for further proceedings.

## I. Findings of Fact

{¶ 10} 1. Davis suffered a workplace injury on July 3, 2013 in the course of and arising out of her employment with respondent Ohio Department of Transportation ("ODOT"). On that day, Davis was walking from a garage to a breakroom, when she missed a step, tripped, and fell, hitting her head on a concrete wall and landing face down on the floor.

{¶ 11} 2. Davis's claim was initially allowed for the conditions of sprain of neck, face contusion, and forehead contusion. In 2014, the claim was allowed for the condition of substantial aggravation of preexisting spinal stenosis and central cord syndrome at C4-5, C5-6, and C6-7. In 2015, the claim was allowed for the psychological condition of adjustment disorder with anxiety/depression. The claim was ultimately disallowed for the condition of lumbar strain.

{¶ 12} 3. In June 2014, Davis underwent spinal surgery including a C3-C7 laminectomy, medial facetectomy, and fusion.

{¶ 13} 4. Davis's first application for compensation for permanent total disability (also known as an "IC-2") was filed on July 27, 2016. In the application, Davis stated that the last day she had worked in any capacity was July 3, 2013, the date of her workplace injury. Davis's application was supported by the reports of a psychologist, Christopher C. Ward, Ph.D., and a family practice physician, David G. Provaznik, D.O.

{¶ 14} 5. In a report dated March 22, 2016, Dr. Ward offered an opinion regarding Davis's allowed psychological condition. Dr. Ward noted that Davis's ongoing psychological symptoms negatively affected her concentration, stress/frustration tolerance, and social interaction. Dr. Ward further noted that Davis's symptoms associated with depression and anxiety were in the moderate to severe range of intensity despite multiple years of therapeutic intervention through individual psychotherapy. Dr. Ward opined that given the extent and permanency of Davis's psychological condition, Davis was permanently and totally incapable of sustaining employment.

{¶ 15} 6. Dr. Provaznik completed a form pertaining to permanent total disability dated April 28, 2016. Dr. Provaznik indicated Davis was permanently disabled from her last public employment position. In support, Dr. Provaznik made the following statements regarding Davis's ability to be employed: "1. Cannot stand or sit for more than 1 hour [at] a time; 2. Difficulty walking; 3. Poor concentration, unable to make critical decisions; 4. Cannot climb, push or pull, lift." (Stip. at 18.)

{¶ 16} 7. A commission staff hearing officer conducted a hearing on Davis's first application for permanent total disability compensation on January 25, 2017. In an order issued on January 28, 2017, the staff hearing officer denied Davis's application. The staff hearing officer made the following findings regarding medical evidence in the claim:

> [Davis] was examined related to the allowed psychological condition in the claim by Donald Tosi, Ph.D. Dr. Tosi found [Davis] as related to the allowed psychological condition in the claim to have no work limitations. Dr. Tosi's report is adopted as a basis for this decision.
>
> [Davis] was examined related to the allowed physical conditions in the claim on [October 17, 2016] by John Cunningham, M.D. Dr. Cunningham found [Davis] as related to the allowed psychical conditions in the claim capable of light duty work, except for the additional limitation of no work above shoulder level. This report is adopted as a basis for this decision.
>
> [Davis] was examined related to the allowed physical conditions in the claim on [September 8, 2016] by Eugene Lin, M.D. Dr. Lin found [Davis] was capable as related to the allowed physical conditions in the claim of light duty work. Dr. Lin's report is adopted as a basis for this decision.
>
> The reports from Dr. Lin and Dr. Cunningham are found compatible.

(Stip. at 19.)[1] With regard to the allowed physical conditions in the claim, the staff hearing officer found Davis "to be capable of light work with the additional limitation of no work above shoulder level." *Id.*

{¶ 17} Next, the staff hearing officer considered the nonmedical disability factors. In considering factors in support of or against a return to work, the staff hearing officer

---

[1] It is noted that the reports of Drs. Tosi, Cunningham, and Lin are not present in the stipulated record submitted by the parties in this case.

found Davis's age to be a negative factor, her past education and computer skills to be a positive factor, and her past work experience to be a positive factor.

{¶ 18} The staff hearing officer stated that Davis's "allowed psychological condition is found not to interfere with her ability to return to work." (Stip. at 20.) Because Davis "retain[ed] the capacity to work" with regard to the allowed conditions in the claim, the staff hearing officer denied Davis's claim. *Id.*

{¶ 19} 8. In an order issued September 27, 2019, a staff hearing officer found Davis had a permanent partial disability in the amount of 53 percent, with 33 percent awarded to the allowed physical conditions and 20 percent awarded to the allowed psychological condition. The staff hearing officer stated that the report was "based upon the reports of D. Scott Long, M.D., dated [February 9, 2019]; Candace Duty, D.C., dated [June 14, 2019]; Jennifer Stoeckel, Ph.D., dated [March 11, 2019]; James Sardo, M.D., dated [July 25, 2017]; and Dr. Gruenfield dated [February 28, 2018]." (Stip. at 22.)[2]

{¶ 20} 9. Davis submitted her second application for permanent total disability compensation on December 9, 2019. Davis's second application was supported by a letter from Dr. Provaznik and a letter from a psychologist, Sarah Barwick, Psy.D.

{¶ 21} 10. Dr. Provaznik stated in a letter dated September 24, 2019 that "the injuries [Davis] sustained from the fall on [July 3, 2013] and the consequent surgery, as a result of that fall, and the traumatic brain injury associated with the fall, preclude her from performing all forms of sustained gainful employment." (Stip. at 36.)

{¶ 22} 11. Following an examination on October 10, 2019, Dr. Barwick stated that "[f]rom a clinical standpoint, it does not appear that Ms. Davis is able to maintain the attention and concentration necessary to succeed in the workplace." (Stip. at 35.) According to Dr. Barwick, Davis's "depression and anxiety limit her socially and it does not appear at this time that she is capable of forming or maintaining productive work relationships with others." *Id.* Noting that Davis had not returned to the workforce since 2013, Dr. Barwick stated that Davis had made "minimal progress" with therapeutic interventions. Dr. Barwick found Davis's condition to be permanent and opined that Davis was permanently and totally disabled based on the allowed psychological condition.

---

[2] The reports noted in the September 27, 2019 order are not present in the stipulated record in this case.

{¶ 23} 12. For purposes of evaluating the second application for permanent total disability compensation, Davis submitted to several independent medical examinations, including two at the request of ODOT and two at the request of the commission. At the request of ODOT, Davis was examined by Seth H. Vogelstein, D.O., with regard to the allowed physical condition, and Michael A. Murphy, Ph.D., with regard to the allowed psychological condition. At the request of the commission, Davis was examined by Bhaskar K.V. Reddy, M.D., with regard to the allowed physical conditions, and Ralph E. Skillings, Ph.D., with regard to the allowed psychological condition.

{¶ 24} 13. Dr. Vogelstein conducted a physical examination of Davis on February 20, 2020. Dr. Vogelstein's report contained a detailed history of Davis's injury and treatment in addition to a summary of Davis's self-reported symptoms, treatment, and activities. Dr. Vogelstein also provided responses to a series of provided questions. First, Dr. Vogelstein provided an opinion regarding Davis's percentage of impairment with regard to the allowed physical conditions. Dr. Vogelstein opined that the allowed conditions of sprain of neck, face contusion, forehead contusion, and central cord syndrome had resolved, resulting in a zero percent whole person impairment. With regard to the allowed condition of substantial aggravation of preexisting spinal stenosis, Dr. Vogelstein found Davis had a 25 percent whole person impairment, thereby resulting in an overall 25 percent whole person impairment.

{¶ 25} Second, Dr. Vogelstein addressed whether Davis was capable of sustained remunerative employment. Reviewing Davis's activities and complaints unrelated to the allowed conditions, Dr. Vogelstein opined that "a very significant portion of Ms. Davis's current functional limitations are now secondary to non-claim related pathology, rather than the allowed conditions in this claim." (Stip. at 43.) Dr. Vogelstein concluded that Davis was not permanently and totally disabled with regard to the allowed physical conditions in the claim. Dr. Vogelstein opined that Davis required "permanent restrictions" including "occasional lifting up to 20 pounds and frequent lifting up to 10 pounds." *Id.* at 44. However, Dr. Vogelstein imposed no restrictions with regard to sitting, standing, or ambulating, and found Davis to be "capable of performing work activities in a light category of work." *Id.* Third, Dr. Vogelstein found Davis was able to return her former position of employment as a travel counselor.

{¶ 26} 14. Dr. Murphy conducted a psychological examination of Davis on February 27, 2020. With regard to aspects of residual functioning, Dr. Murphy reported the following results: (1) a mild impairment of 8 percent for daily activities; (2) no impairment for social interaction; (3) a mild 10 percent impairment for adaptation; and (4) a mild 8 percent impairment for concentration, persistence, and pace. (Stip. at 49.) Dr. Murphy also offered responses to provided questions. First, based on the results for aspects of residual functioning, Dr. Murphy found the allowed psychological condition resulted in a 7 percent impairment. Second, Dr. Murphy opined that Davis was capable of sustained remunerative employment. Dr. Murphy included a permanent restriction that "[w]ork activity should be at a low to normal pace with a low to normal climate of work stress." *Id.* at 51. Third, Dr. Murphy stated that Davis's allowed psychological condition "does not preclude her former occupation." *Id.*

{¶ 27} 15. Dr. Reddy conducted a physical examination of Davis on July 28, 2020 and produced a commission specialist report on the same date. Dr. Reddy reviewed Davis's history, including but not limited to her occupational, educational, medical, and social history. Dr. Reddy summarized Davis's reported symptoms and detailed the results of the examination. With regard to percentage of whole person impairment, Dr. Reddy examined the conditions of sprain of neck, substantial aggravation of preexisting spinal stenosis and central cord syndrome together, finding a whole person impairment of 23 percent. For the conditions of face contusion and forehead contusion, Dr. Reddy found no impairment. As a result, Dr. Reddy concluded that Davis's whole person impairment was 23 percent for all of the allowed conditions in the claim. Dr. Reddy opined that Davis "suffers from cervical pain and sensory dysesthesias in her upper limbs as residual effects from her cervical condition and related surgery." (Stip. at 55.) Dr. Reddy noted that Davis "may have difficulty with finer hand motions related work because of her cervical residual effects related dysesthesias" and "will also have difficulty lifting more than 10 pounds of weight." *Id.* Dr. Reddy found Davis to be at maximum medical improvement for the allowed conditions and concluded that Davis was "capable of sedentary work with restrictions of not lifting above 10 pounds of weight with any frequency" and being "allowed to adjust her position frequently while sitting." *Id.*

{¶ 28} Dr. Reddy also completed a physical strength rating form, which was attached to the report. In the form, Dr. Reddy indicated Davis was capable of sedentary work with the following restrictions: "No lifting above 10 [pounds] of weights. No frequent bending [and] turning [of] neck. May be allowed to change positions every 20-30 minutes." *Id.* at 56.

{¶ 29} 16. Dr. Skillings conducted a psychological examination of Davis on August 25, 2020 and produced a commission mental and behavioral specialist report dated September 9, 2020. The report contained a summary of various topics, including the history of Davis's condition, current treatment, mental health history, and past medical history. Dr. Skillings summarized the results of the mental status examination and provided an analysis of the four functional areas.

{¶ 30} Next, Dr. Skillings responded to questions posed by the commission. First, Dr. Skillings found Davis had reached maximum medical improvement for the allowed psychological condition, noting that Davis was "seven years post injury with a psychological condition that is mild in severity and situationally determined." (Stip. at 65.) Second, with regard to the four functional areas, Dr. Skillings found: (1) a class 2 mild impairment of 11 percent for activities of daily living; (2) a class 2 mild impairment of 12 percent for social functioning; (3) a class 3 moderate impairment of 26 percent for concentration, persistence, and pace; and (4) a class 3 moderate impairment of 28 percent for adaptation. Based on these findings, Dr. Skillings indicated Davis had a class 2 mild whole person impairment of 19 percent.

{¶ 31} In an attached occupational activity assessment, Dr. Skillings found Davis was capable of work with the following limitation:

> Her ease of becoming overwhelmed impairs ordinary work problem solving. This occurs when she is confronted with typical situations and even greater difficulty with pace and persistence in unusual situations. Efficient problem solving is limited by her continued personal complaint and thereby interrupting work setting job duties. Repetitive apologetic self criticism interferes with effective social functioning in a work setting. Adaptability is limited and she would need a job with routine expectations. She would not be able to demonstrate strategic thinking.

(Stip. at 66.)

{¶ 32} 17. A staff hearing officer held a hearing on Davis's second application for permanent disability compensation on December 10, 2020. The staff hearing officer denied the application in an order issued on December 19, 2020. In the order, the staff hearing officer summarized Davis's occupational history, the circumstances of the 2013 workplace injury, and the history of allowances in the claim. The reports submitted by Davis in support of her application were rejected as unpersuasive. The staff hearing officer instead found the opinions of Drs. Reddy, Vogelstein, Murphy, and Skillings to be persuasive. As a result, the staff hearing officer relied on those reports and summarized the findings contained therein. The staff hearing officer noted the restrictions in Dr. Reddy's report, and found that those restrictions were not "beyond what is typically associated with sedentary work in today's society." (Stip. at 68.) The staff hearing officer concluded that Davis "retain[ed] the residual physical ability to engage in sedentary to light duty work." *Id.* The staff hearing officer also noted the restrictions with regard to the allowed psychological condition in Dr. Murphy and Dr. Skillings's reports.

{¶ 33} Next, the staff hearing officer reviewed the nonmedical disability factors. Though Davis's age was found to be a negative factor, the staff hearing officer found Davis's "educational and vocational assets provide[d] [her] the necessary skills to perform entry level work within her physical and emotional capabilities." *Id.* at 68-69. Additionally, the staff hearing officer found Davis had "the intellectual ability and vocational and educational skills to obtain and perform unskilled and semi-skilled work with or without informal training, such as on-the-job training." *Id.* at 69. Based on Davis's age, education, and work history, the staff hearing officer concluded that Davis was capable of performing sustained remunerative employment and, therefore, was not permanently and totally disabled.

{¶ 34} 18. On October 4, 2021, ODOT filed a motion (also referred to as a "C-86 motion"). Based on an allegation that Davis's conditions of substantial aggravation of preexisting spinal stenosis at C3-C7 had returned to a level that would have existed without the injury or abated, ODOT asserted that compensation and benefits including temporary total disability were no longer payable.

{¶ 35} 19. On December 16, 2021, a commission district hearing officer conducted a hearing on ODOT's October 4, 2021 motion to terminate temporary total disability. In an order on December 22, 2021, the district hearing officer denied ODOT's motion.

{¶ 36} 20. A staff hearing officer conducted a hearing on an appeal filed by ODOT from the December 22, 2021 order. In an order issued on February 16, 2021, the staff hearing officer affirmed the order.

{¶ 37} 21. Davis filed her third application for permanent total disability compensation on October 24, 2023. Davis's application was supported by a new letter from Dr. Provaznik with regard to the allowed physical conditions and a report from Ryan Wagner, Psy.D., with regard to the allowed psychological condition.

{¶ 38} 22. Dr. Provaznik stated in a letter dated June 8, 2023 that Davis was "unable to perform a sedentary job description due to the weakness to her cervical spine and limited rotation and flexion demonstrated in the cervical spine." (Stip. at 85.) Dr. Provaznik further stated that "[a]nything that requires lifting, gripping, or grasping she would be at a disadvantage due to her weakness." *Id.*

{¶ 39} 23. Dr. Wagner examined Davis on July 6, 2023 and provided a report based on the results of the examination. Dr. Wagner administered several psychometric tests, including the MMPI-3 test, which was described as "a well-researched, validated instrument used to measure personality traits and emotional functioning in adults." (Stip. at 88.) Dr. Wagner reported the scores from the test and stated that Davis's "MMPI-3 profile is invalid as she endorsed an extreme number of somatic symptoms." (Stip. at 88.) Dr. Wagner reported that Davis's response to a memory test was within normal limits and depression symptoms were measured in the moderate range. Dr. Wagner found that Davis had "ongoing symptoms of depression and anxiety based on her presentation despite her long history of treatment." *Id.* at 90. Davis's conditions, according to Dr. Wagner, "affect her ability to engage in even sedentary work due to ongoing difficulties with distraction, frustration tolerance, persistence and pace as well as decreased socialization in general." *Id.* Dr. Wagner also found Davis's "mental health symptoms would affect her ability to be retrained further due to her level of distraction, emotional distress, low motivation, and demoralization, which are solely due to her

allowed conditions." *Id.* at 91. As a result, Dr. Wagner found Davis to be permanently and totally disabled as a result of the allowed psychological condition.

{¶ 40} 24. Following the submission of the third application for permanent total disability compensation, Davis was again examined at the request of ODOT and the commission. For ODOT, Davis was examined by Jerome H. Bonier, D.O., with regard to the allowed physical conditions, and again by Dr. Murphy with regard to the allowed psychological condition. For the commission, Davis was examined by Daniel W. Seachrist, M.Ed., for the allowed psychological condition, and D. Scott Long, M.D., for the allowed physical conditions.

{¶ 41} 25. Dr. Bonier conducted a physical examination of Davis on December 6, 2023 and produced a report on the same date. Dr. Bonier summarized Davis's medical history, the records reviewed, present complaints, and the results of the physical examination. Dr. Bonier also offered opinions in response to provided questions. First, Dr. Bonier stated that Davis had a 29 percent impairment related to the allowed conditions. Second, Dr. Bonier opined that Davis was capable of sustained remunerative employment with the following restrictions: "[N]o lifting greater than 20 pounds occasionally and 10 pounds constantly. She is able to stand and walk without difficulty. She should restrict pushing and pulling on a regular basis. She may sit for an indefinite period of time and stand an indefinite period of time. Walking is not restricted." (Stip. at 101.) Third, Dr. Bonier found Davis was unable to return to her previous position of employment as a travel counselor without restrictions. The restrictions included the following:

> [Davis] is unable to perform the outdoor activities that are described in her job description, to include grounds maintenance duties such as mowing, trimming, and edging the lawn, applying mulch, weeds, and watering lawns and flower beds, as well as removing debris from the parking and sidewalk areas, and using her hand to shovel and a broom to remove snow and ice. Except for these restrictions, the remaining job duties appear to be within her abilities.

*Id.*

{¶ 42} 26. Dr. Murphy performed another psychological examination of Davis on December 8, 2023. In Dr. Murphy's report following this examination, Dr. Murphy

summarized findings from psychological tests administered to Davis. Dr. Murphy found Davis had a score of 43 on the Beck Anxiety Inventory, which "placed [Davis] in the range of severe anxiety." (Stip. at 108.) Dr. Murphy also employed the Beck Depression Inventory II, finding that Davis had a score of 48, which placed Davis "in the range of severe depression." *Id.* at 109. Dr. Murphy also evaluated Davis using the Structured Inventory of Malingered Symptomology, which was described as a "multi-axial, self-administered measure developed to serve as a screening tool for the detection of feigned or exaggerated psychiatric disturbance and cognitive dysfunction." *Id.* With regard to this evaluation method, Dr. Murphy stated that Davis's "[t]otal score was significantly elevated above the recommended cutoff score for the identification of likely feigning." (Stip. at 109.)

{¶ 43} Dr. Murphy also responded to provided questions. Regarding aspects of residual functioning, Dr. Murphy found a class 2 mild impairment in each of the aspects, with a 16 percent whole person impairment due to the allowed psychological condition. Next, Dr. Murphy opined Davis was capable of sustained remunerative employment, stating that "[w]hile severe distress is reported by Beck Inventories, the [Structured Inventory of Malingered Symptomology] points to exaggeration across multiple scales." *Id.* at 110. Dr. Murphy noted that Davis "walks (30-45 minutes), dines out, [and] makes small house repairs." *Id.* Finally, Dr. Murphy found that Davis was "capable of work activity as a travel counselor," while also stating that a "low to normal climate of stress is advisable." *Id.*

{¶ 44} 27. Seachrist conducted a psychological examination of Davis on February 12, 2024 and produced a commission mental and behavioral specialist report. In the report, Seachrist summarized a number of items including the history of Davis's condition, current symptoms, mental health history, and the results of a mental status examination.

{¶ 45} Next, Seachrist provided opinions in response to provided questions. First, with regard to maximum medical improvement, Seachrist stated: "Ms. Davis's description of her treatment focus and a review of the treatment notes suggest that the allowed mental health condition is and has been at treatment plateau for the last few years. Also, no changes in the allowed mental health condition are documented which along with the

supportive treatment contacts again indicate [maximum medical improvement] is maintained." (Stip. at 115.) Seachrist then provided the class and percentage of whole person impairment with regard to each of the four functional areas and overall. Seachrist found Davis had a class 3, 50 percent impairment for each of the four functional areas, thereby resulting in a class 3, 50 percent whole person impairment overall. With regard to Davis's residual functional capacity, Seachrist stated, "When the sole consideration is the allowed mental health condition and no other factors or conditions, residual capacities reflect limitations due to mental sluggishness and inconsistent attention and focus." *Id.* at 116. In the occupational activity assessment form, which was referenced in and attached to the report, Seachrist found that Davis was incapable of work based solely on impairment resulting from the allowed psychological condition and without consideration of Davis's age, education, or work training. The form contained the additional notation that "Ms. Davis's residual capacities for work environments are limited due to inconsistent focus, attention and stamina." (Stip. at 117.)

{¶ 46} 28. Dr. Long conducted a physical examination of Davis on February 21, 2024 and produced a commission specialist report. In the report, Dr. Long provided a history of the present condition, a summary of Davis's reported symptoms and impact of the allowed condition, and the results of the physical examination. Dr. Long proceeded to respond to questions posed by the commission.

{¶ 47} First, "based upon a history and physical examination, review of medical documentation provided, treatment received, including surgeries, and response to treatment," Dr. Long opined that Davis had "reached maximum medical improvement for each of the physical allowed conditions in this claim." (Stip. at 122.) Second, Dr. Long estimated the percentages of whole person impairment arising from each of the allowed physical conditions as follows: (1) for the conditions of face contusion and forehead contusion, zero percent whole person impairment; (2) for the conditions of sprain of neck and substantial aggravation of preexisting spinal stenosis and central cord syndrome at C4-5, C5-6, and C6-7, a 35 percent whole person impairment. As a result, Dr. Long found Davis had a combined 35 percent whole person impairment for the allowed physical conditions. Third, Dr. Long summarized Davis's residual functional capacity as follows:

> Based upon my evaluation of [Davis], history of treatment, including surgical interventions, and response to treatment, it is my opinion the injured worker is capable of work in a sedentary capacity. This is based on my objective findings of reduced cervical range of motion, noted motor and sensory deficits, history of cervical surgeries, as well as pain which affects her activities of daily living. [Davis] would be capable of sitting most of the time with occasional walking or standing, and lifting/carrying/pushing/pulling up to 10 pounds occasionally.

*Id.* at 124. Finally, Dr. Long completed a physical strength rating form enclosed with the report. In the physical strength rating form, Dr. Long indicated Davis was capable of sedentary work with a notation of "see report" in regard to further limitations. *Id.* at 126.

{¶ 48} 29. A staff hearing officer held a hearing on Davis's third application for permanent total disability compensation on May 9, 2024. The staff hearing officer denied the application in an order issued on May 18, 2024. In the order, the staff hearing officer reviewed some of the history of the claim, including the findings from the orders denying Davis's first and second applications for permanent total disability compensation. "Before adjudication of the merits of this third IC-2 Application," the staff hearing officer found that it was necessary under R.C. 4123.58(G) to "make the threshold determination that [Davis] has submitted sufficient evidence of 'new and changed circumstances' to allow the [commission] to consider this third IC-2 Application . . . based upon the same injury as the previous two IC-2 Applications." (Stip. at 135.) The staff hearing officer found that Davis had "not submitted sufficient evidence of new and changed circumstances to warrant consideration and a new adjudication of [Davis's] third IC-2 Application." *Id.* Thereafter, the staff hearing officer made the following findings:

> The Staff Hearing Officer finds that there have been no amendments to or additional medical/psychological conditions allowed in this claim since [Davis's] last IC-2 Application was denied and [Davis] was found capable of remunerative employment. The Staff Hearing Officer finds that [Davis] has not undergone any additional surgeries or other substantial medical procedures since her last IC-2 Application was adjudicated and denied. [Davis] has not requested temporary total disability compensation since 2018, well prior to the adjudication of her last IC-2 Application. The Staff Hearing Officer finds that is strong evidence that [Davis's] medical and/or psychological

conditions are essentially stable. The Staff Hearing Officer therefore finds that [Davis] did not present sufficient evidence at the hearing of any meaningful or substantial new and changed circumstances which would allow the [commission] to consider [Davis's] subsequent third [sic] IC-2 Application . . . for the exact same injury and allowed conditions previously adjudicated in her prior IC-2 Application. . . .

(Stip. at 135.)

{¶ 49} Next, the staff hearing officer noted arguments made by Davis's attorney that "a new and changed circumstance exists in the fact that traumatic brain injury (TBI), mistakenly identified as a factor by her treating physician in the previous IC-2 Application, has been ruled out and TBI is not a consideration in [Davis's] treating physician's opinion [at] this time." *Id.* at 135-36. This argument was rejected as unpersuasive by the staff hearing officer, who found that "ruling out TBI, a non-allowed condition, does not constitute a new and changed circumstance in [Davis's] claim." *Id.* at 136. The staff hearing officer found that "the only change presented by [Davis] since the adjudication and denial of her last IC-2 Application is that [Davis] has aged." *Id.* The staff hearing officer found that "[j]ust as age, in and of itself, is not a sufficient basis for a finding of permanent total disability, so too aging, in and of itself, does not constitute sufficient evidence of new and changed circumstances required by R.C. 4123.58(G)." *Id.* Stating that permanent total disability compensation was "compensation of last resort," the staff hearing officer noted that "after [Davis's] second IC-2 Application had been denied and [Davis] had been found to be capable of remunerative employment, [Davis] testified that she did not seek out or apply for any employment position, and made no attempt whatsoever to return to the workforce." *Id.* In conclusion, the staff hearing officer found Davis had not "submitted sufficient evidence of new and changed circumstances in this claim, as required by R.C. 4123.58(G), to warrant the [commission] adjudicating another IC-2 Application . . . in this claim." *Id.*

{¶ 50} 30. Davis filed a motion for reconsideration of the staff hearing officer's May 18, 2024 order. The commission denied Davis's request in an order issued on June 21, 2024.

{¶ 51} 31. Davis commenced this action in mandamus with the filing of her complaint on July 12, 2024.

## II. Discussion and Conclusions of Law

{¶ 52} Davis seeks a writ of mandamus ordering the commission to vacate its decision denying Davis's third application for permanent total disability compensation and to issue an order granting Davis's application.

## A. Requirements for Mandamus

{¶ 53} In order for this court to issue a writ of mandamus as a remedy from a decision of the commission, Davis must establish a clear legal right to the requested relief, that the commission has a clear legal duty to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). "A writ of mandamus may lie when there is a legal basis to compel the commission to perform its duties under the law or when the commission has abused its discretion in carrying out its duties." *State ex rel. Cassens Corp. v. Indus. Comm. of Ohio*, 2024-Ohio-526, ¶ 10.

{¶ 54} With regard to legal questions, a writ of mandamus " 'may issue against the Industrial Commission if the commission has incorrectly interpreted Ohio law.' " *Cassens* at ¶ 10, quoting *State ex rel. Gassmann v. Indus. Comm.*, 41 Ohio St.2d 64, 65 (1975). With regard to factual determinations, where there is no evidence upon which the commission could have based its factual determination, the commission has abused its discretion and the issuance of a writ of mandamus is appropriate. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165, 167 (1981). *See State ex rel. Johnson v. Indus. Comm.*, 11 Ohio App.3d 22, 23 (10th Dist. 1983) ("For more than fifty years, the 'some-evidence' rule, although not always referred to by that name, has been recognized as the rule to be applied in determining whether there has been an abuse of discretion with respect to factual matters."). "The commission is the exclusive finder of fact and has the sole responsibility to evaluate the weight and credibility of the evidence." *See State ex rel. Kidd v. Indus. Comm.*, 2023-Ohio-2975, ¶ 17.

{¶ 55} Furthermore, in all matters affecting the rights and obligations of the claimant or employer, the commission must specifically state what evidence has been relied upon and briefly explain the reasoning for its decision. *See State ex rel. Noll v. Indus.*

*Comm.*, 57 Ohio St.3d 203 (1991), at syllabus; *State ex rel. Yellow Freight Sys. v. Indus. Comm.*, 71 Ohio St.3d 139, 142 (1994).

## B. Statutory Requirements for Permanent Total Disability

{¶ 56} "[T]he purpose of permanent and total disability benefits is to compensate injured persons for impairment of earning capacity." *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167, 170 (1987), citing *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 42 Ohio St.2d 278 (1975). "Permanent total disability is the inability to do any sustained remunerative work." *State ex rel. Schultz v. Indus. Comm.*, 2002-Ohio-3316, ¶ 61, citing *Stephenson* at 170. *See* Adm.Code 4121-3-34(B)(1).

{¶ 57} R.C. 4123.58 governs compensation for permanent total disability, allowing compensation only when one of the following conditions is met:

> (1) The claimant has lost, or lost the use of both hands or both arms, or both feet or both legs, or both eyes, or of any two thereof; however, the loss or loss of use of one limb does not constitute the loss or loss of use of two body parts;
>
> (2) The impairment resulting from the employee's injury or occupational disease prevents the employee from engaging in sustained remunerative employment utilizing the employment skills that the employee has or may reasonably be expected to develop.

R.C. 4123.58(C).

{¶ 58} Circumstances prohibiting the awarding of permanent total disability compensation are contained in R.C. 4123.58(D), which provides as follows:

> Permanent total disability shall not be compensated when the reason the employee is unable to engage in sustained remunerative employment is due to any of the following reasons, whether individually or in combination:
>
> (1) Impairments of the employee that are not the result of an allowed injury or occupational disease;
>
> (2) Solely the employee's age or aging;
>
> (3) The employee retired or otherwise is not working for reasons unrelated to the allowed injury or occupational disease.
>
> (4) The employee has not engaged in educational or rehabilitative efforts to enhance the employee's employability, unless such efforts are determined to be in vain.

R.C. 4123.58(D).

{¶ 59} R.C. 4123.58 was amended by 2021 Am.Sub.H.B. No. 75 ("H.B. 75"), which in part added R.C. 4123.58(G).[3] Effective September 28, 2021, R.C. 4123.58(G) provides:

> If the industrial commission has adjudicated a claimant's application for compensation payable under this section for permanent total disability and issued a final order denying compensation for that application, the claimant shall present evidence of new and changed circumstances before the industrial commission may consider a subsequent application filed by the claimant for compensation under this section for the same injury or occupational disease identified in the previous application.

R.C. 4123.58(G). Thus, "the requirement in R.C. 4123.58(G) that a claimant demonstrate new or changed circumstances creates a procedural mechanism for the commission's

---

[3] Following the amendments to R.C. 4123.58 enacted in H.B. 75, R.C. 4123.58 was again amended by the 134th General Assembly through the enactment of 2023 Am.Sub.H.B. No. 281 ("H.B. 281"). H.B. 281, which became effective April 6, 2023, made a minor change to R.C. 4123.58(F) by striking through and thereby deleting the word "handicapped," which immediately preceded "individuals," and inserting the phrase "with disabilities" after the aforementioned "individuals." However, the remaining text of R.C. 4123.58 in H.B. 281 did not include the text of R.C. 4123.58(G). H.B. 281 gave no specific indication that it intended to amend R.C. 4123.58 by removing R.C. 4123.58(G) through the usual means of striking through the existing text of R.C. 4123.58(G). *See* Adm.Code 103-5-01 ("Old matter that is to be omitted from an existing codified or uncodified section is indicated by retaining the matter as it appears in the section and striking it through with a horizontal line."); *State v. Wilson*, 77 Ohio St.3d 334, 337 (1997) (stating in considering the effect of a former version of R.C. 151.52 that "[m]atter to be affected by an 'existing sections' repeal must appear in the body of the enrolled Act and must be stricken through"). Section 2 of H.B. 281 provided in pertinent part: "That existing sections * * * 4123.58 * * * of the Revised Code are hereby repealed."

The Legislative Service Commission includes the text of R.C. 4123.58(G) in its official online version of the Revised Code. The following note from the Legislative Service Commission appears after the text of R.C. 4123.58 on its website: "The Legislative Service Commission presents the text of this section as amended by multiple acts of the General Assembly. This presentation recognizes the principle stated in R.C. 1.52(B) that amendments are to be harmonized if reasonably capable of simultaneous operation." Legislative Service Commission, *Section 4123.58*, https://codes.ohio.gov/ohio-revised-code/section-4123.58 (Accessed August 5, 2025.).

The provision in R.C. 1.52 noted by the Legislative Service Commission provides:

> If amendments to the same statute are enacted at the same or different sessions of the legislature, one amendment without reference to another, the amendments are to be harmonized, if possible, so that effect may be given to each. If the amendments are substantively irreconcilable, the latest in date of enactment prevails. The fact that a later amendment restates language deleted by an earlier amendment, or fails to include language inserted by an earlier amendment, does not of itself make the amendments irreconcilable. Amendments are irreconcilable only when changes made by each cannot reasonably be put into simultaneous operation.

R.C. 1.52(B). *See State v. McCullough*, 2018-Ohio-4499, ¶ 11-12 (9th Dist.); *Wilson* at 337.

adjudication of subsequent [permanent total disability] applications filed after the commission's denial of an initial application for [permanent total disability]." *State ex rel. Parrish v. Randolph*, 2024-Ohio-1135, ¶ 9 (10th Dist.). *See State ex rel. Prinkey v. Emerine's Towing, Inc.*, 2024-Ohio-5713, ¶ 21.

**C. Analysis**

{¶ 60} Davis asserts the commission's denial of her third application for permanent total disability compensation was based on mistakes of fact and law. Specifically, Davis contends the commission abused its discretion in finding there was not evidence of new and changed circumstances because the evidence included "multiple physician opinions demonstrating higher percentages of impairments, and worsening of the psychological condition to a substantial degree." (Davis's Brief at 10.) The commission responds that there was not an abuse of discretion because Davis "failed to provide sufficient evidence of new and changed circumstances." (Commission's Brief at 13.) To address the parties' arguments regarding whether the evidence met the requirements of R.C. 4123.58(G), it is first necessary to address the commission's interpretation and analysis of those requirements.

{¶ 61} In the order denying Davis's third application for permanent total disability compensation, the staff hearing officer made several findings regarding circumstances that were not present at the time of Davis's third application. Following this, the staff hearing officer found Davis "did not present sufficient evidence at the hearing of any **meaningful or substantial** new and changed circumstances which would allow the Industrial Commission to consider [Davis's] subsequent third IC-2 Application." (Emphasis added.) (Stip. at 135.) R.C. 4123.58(G), however, requires only that a claimant "present **evidence** of new and changed circumstances before the industrial commission may consider a subsequent application" for permanent total disability compensation. (Emphasis added.) *See Prinkey* at ¶ 21. The plain text of the statute does not require that the claimant's evidence must be meaningful or substantial; rather, it requires only that it is evidence of new and changed circumstances. By applying a heightened burden for Davis's evidence than was actually required under the terms of the statute, the staff hearing officer effectively added language to the statute's requirement. However, neither a court nor the

commission may add words when construing a statute. *See State v. Hughes*, 1999-Ohio-118, ¶ 14 ("In construing a statute, we may not add or delete words."); *Lamie v. United States Trustee*, 540 U.S. 526, 538 (2004), quoting *Iselin v. United States*, 270 U.S. 245, 251 (1926) (rejecting a party's argument that "would result 'not [in] a construction of [the] statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope' " (Brackets in original.)); *State ex rel. LetOhioVote.org v. Brunner*, 2009-Ohio-4900, ¶ 49.

{¶ 62} The General Assembly has previously enacted a requirement for a workers' compensation claimant to demonstrate "substantial" evidence of new and changed circumstances. R.C. 4123.57, which pertains to partial disability compensation, provides that "[n]o application for subsequent percentage determinations on the same claim for injury or occupational disease shall be accepted for review by the district hearing officer unless supported by ***substantial*** *evidence of new and changed circumstances* developing since the time of the hearing on the original or last determination." (Emphasis added.) R.C. 4123.57(A). Thus, the General Assembly knows how to require a claimant to present "substantial" evidence of new and changed circumstances. *See Wilson v. Durrani*, 2020-Ohio-6827, ¶ 31 (finding that the General Assembly's incorporation of the saving statute in a product-liability statute demonstrated not only that "the General Assembly knew how to create an exception to a statute of repose for application of the saving statute when it intended to do so"). But the General Assembly did not enact such a requirement in R.C. 4123.58(G).

{¶ 63} By applying a different or heightened standard from that required by R.C. 4123.58(G) in evaluating whether Davis met her burden under the statute, the staff hearing officer committed legal error. *See Indus. Comm. of Ohio v. Ripke*, 129 Ohio St. 649 (1935), paragraph one of the syllabus ("It is prejudicial and reversible error for a court to place a condition upon a party's right to recover which the law itself does not impose."). *See also State v. Wilson*, 2024-Ohio-776, ¶ 21. For this reason alone, this matter must be remanded to the commission for it to make findings regarding R.C. 4123.58(G) under the proper legal standard. *See State ex rel. Ryan Alternative Staffing, Inc. v. Moss*, 2021-Ohio-3539, ¶ 21 (issuing limited writ ordering the

commission to "reconsider this case under the proper standard, as articulated in this opinion").

{¶ 64} The parties strongly disagree regarding whether the evidence present in the record at the time Davis's third application was heard constitutes evidence of new and changed circumstances. On the one hand, Davis argues that the staff hearing officer "completely ignored evidence of increased percentages of impairments, subjective complaints of pain and limitation, and substantial worsening of the psychological conditions," any one of which Davis argues is "sufficient to find new and changed circumstances." (Davis's Brief at 12.) Further, Davis argues that "[t]he fact the Commission listed other reasons why no new and changed circumstances were demonstrated does not alter the fact that it ignored uncontradicted evidence that [Davis's] conditions had worsened since the last [permanent total disability] hearing." *Id.* On the other hand, the commission and ODOT argue that the commission was not required to list the evidence on which it did not rely.

{¶ 65} The record in this matter reflects differences in the opinions of the commission's specialists from Davis's second to third application for permanent total disability compensation. For purposes of providing an opinion in response to the second application, the commission referred Davis to Dr. Reddy and Dr. Skillings. Dr. Reddy found that Davis had a 23 percent whole person impairment as a result of the allowed physical conditions and was capable of sedentary work with restrictions. With regard to the allowed psychological condition, Dr. Skillings found Davis had a class 2 mild whole person impairment of 19 percent and concluded that Davis was capable of work with limitation. In response to the third application, the commission referred Davis to Dr. Long and Seachrist. While Dr. Long also concluded that Davis was capable of work, Dr. Long found Davis had a 35 percent whole person impairment for the allowed physical conditions—an increase of 12 percent from Dr. Reddy's report. With regard to the allowed psychological condition, Seachrist found that Davis had a class 3, 50 percent whole person impairment—an increase of 31 percent from Dr. Skillings's report. Moreover, unlike Dr. Skillings, Seachrist found Davis was incapable of work based solely on impairment resulting from the allowed psychological condition.

{¶ 66} The staff hearing officer provided no analysis of the changes between the opinions of the commission's specialists. *Compare Prinkey* at ¶ 24 (stating that the commission's staff hearing officer "failed to provide any reasoning why the medical reports [the claimant] submitted are not evidence of new and changed circumstances" and finding that the staff hearing officer "failed to cite the evidence on which it *relied* in reaching its decision, instead mentioning all the evidence it *considered*" (Emphasis in original.)). Neither the commission nor ODOT dispute that changes in the percentages of impairment in medical reports could constitute new and changed circumstances. Indeed, ODOT acknowledges that "this court has found that percentage increases in permanent partial percentage is not a 'improper consideration' of new and changed circumstances." (Sic passim.) (ODOT's Brief at 15.) Despite these changes between the opinions of the commission's specialists, the staff hearing officer stated that "the only change presented by [Davis] since the adjudication and denial of her last IC-2 Application is that [Davis] has aged." *Id.* Nevertheless, because the commission must consider the evidence presented by Davis under the correct legal standard, it is not necessary at this time to resolve whether the evidence satisfies the requirements of R.C. 4123.58(G).

**D. Conclusion**

{¶ 67} The question of whether a claimant has met the requirements of R.C. 4123.58(G) is a matter for the commission, as the exclusive evaluator finder of fact in workers' compensation matters, to make in the first instance. *See generally State ex rel. Navistar, Inc. v. Indus. Comm. of Ohio*, 160 Ohio St.3d 7, 2020-Ohio-712, ¶ 21. However, in making this determination, the commission may not apply an incorrect legal standard. *See Ripke*, 129 Ohio St. 649, at paragraph one of the syllabus. Based on the foregoing, the magistrate finds the commission erred as a matter of law by applying an incorrect legal standard in determining that Davis failed to meet the requirements of R.C. 4123.58(G). Accordingly, it is the decision and recommendation of the magistrate that this court should grant a limited writ returning this matter to the commission for further proceedings in accordance with law and this decision.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.